EMILY PARKHURST

*v.*

GEORGE A. RACE *et al.*

*Filed at Ottawa November 10, 1881.*

1. LIMITATION—*to writ of error—how presented.* In the absence of a plea of the Statute of Limitations to a writ of error, or some other matter in the record showing that the suit brought by a minor comes too late, a suggestion in argument that the suit is not brought in time can not be considered.

2. ALLEGATIONS AND DECREE—*must correspond.* It is error for the court to find a fact not alleged in the pleadings of the parties, but stated directly the reverse, and against the entire evidence preserved in the record.

3. So, where a party by his answer to an original bill, and in his cross-bill, alleges a redemption from a master's sale on foreclosure, which fact is proven by the evidence in the case, it is error for the court to find in favor of such person that no redemption had been made, or attempted to be made, and invest him with the title to the premises as a purchaser of the certificate of the sale, and thereby deprive a minor heir of her title, which was saved by the redemption.

4. CHANCERY—*presumption in favor of a finding of facts.* Where it appears that oral evidence was heard on the trial of a chancery suit, which is not preserved in the record, and the decree contains a recital of the facts proven, in the absence of anything in the record to the contrary it will be presumed that the findings and recitals in the decree were sustained by proofs not in the record; but when such finding is directly contrary to the finding of this court previously had in the same case, and such fact is not alleged in the pleadings, but is at variance with the pleading of the party relying upon such

supposed facts, and it is proven in the case not be true, such a presumption of course can not prevail.

5. REDEMPTION—*effect upon title under the sale.* No title can properly be deduced through a sale under a foreclosure of a mortgage, after that sale has been rendered inoperative by a redemption.

WRIT OF ERROR to the City Court of Aurora; the Hon. · CHARLES D. F. SMITH, Judge, presiding.

In 1855, Nahum Parkhurst and his son, Reuben Parkhurst, bought of one Ferris the tract of land, in the county of Kendall, to which this controversy relates, and it was conveyed to them jointly. They then executed a note and mortgage to Ferris for the sum of about $1000, being the purchase money, or a part thereof. In May, 1863, Reuben died, leaving a widow, Jannette, and an infant daughter, Emily, (who is the plaintiff in error in this case.) In December, 1863, a suit was brought in chancery for the foreclosure of this mortgage by one Amos Parkhurst, who was the assignee of this note and mortgage. Nahum Parkhurst, and the widow and minor heir of Reuben Parkhurst, were made defendants. In May, 1865, a decree of foreclosure was rendered in the circuit court of Kendall county, and the master in chancery sold the land under this decree on the 5th of August, 1865, to B. F. Phillips, for $1700. The master at once paid the mortgage debt and costs, and there remained a surplus of $609. Pending the suit for foreclosure, Nahum Parkhurst had, by quitclaim deed, conveyed to B. F. Phillips the undivided half of this land; and in May, 1866, under an order of court, this surplus was paid over, one-half to Phillips, and one-half to the widow of Reuben Parkhurst, who was also the guardian of the minor heir, Emily. The widow, by this time, by marriage, had become Jannette Earl.

On the 2d of August, 1866, three days before the time for redemption from the master's sale under the mortgage expired, Jannette Earl, (herself having right of dower in

one undivided half of this land, and being the guardian of the infant, Emily, in whom was the fee thereof,) with money furnished by a friend, A. D. Titsworth, tendered to Phillips the amount of money necessary to redeem the land from the master's sale. He refused to take the money, and thereupon, upon the same day, she deposited with the master who had made the sale, the full amount, as a redemption from that sale, and thereupon the master, on the same day, tendered this redemption money to Phillips, who again refused the same. On the 31st day of the same month Phillips assigned to Mrs. Mary F. Stout the certificate of purchase given to him at the master's sale of August 5, 1865, and Mrs. Stout presented the same to the master, with the assignment of Phillips thereon, and demanded the money in his hands which had been deposited as redemption money by Mrs. Earl, the guardian of Emily, and the master paid the same over to her, taking her receipt for the same, being $1870. The master received the certificate of purchase, and delivered the same to Jannette Earl, who had paid the redemption money. On the 27th of September, 1866, Jannette sold the land to George A. Race for $2200, and she and Titsworth executed to Race a warranty deed for the same.

On May 10, 1867, this suit was begun by Mary E. Stout, in the circuit court of Kendall county, claiming to own one undivided half of this land, and asking for partition thereof. One George Race, and Emma Parkhurst, the minor heir of Reuben, deceased, and also Jannette Earl, (formerly Jannette Parkhurst, and the widow of Reuben Parkhurst, deceased,) who was guardian of her minor child, Emily, (called Emma in this petition,) and one A. D. Titsworth, who was also a guardian of this minor, were all made defendants, and served with process. In this bill no mention was made of the mortgage, or of the proceedings and sale made under the same, but it said that Race claimed to own one-half the land under a deed from Jannette and Titsworth to him.

Race and the other defendants answered jointly, and among other things set up the mortgage and subsequent proceedings stated, and setting up a redemption from the master's sale, made with money furnished by Titsworth to Jannette, who was the widow of Reuben, entitled to dower in the land, and was also guardian of the minor, Emily, and claiming that Mary Stout could not equitably have partition without refunding one-half of the money paid for redemption. The answer also stated that after paying the money to redeem the land, Jannette sold the land to Race, and she and Titsworth made a warranty deed, conveying the same to Race for $2200.

The statements of Race and others in this answer, as to the fact of a redemption, were, that Titsworth furnished to Jannette Earl the money with which to make the redemption, and the same was paid over to Phillips, or to Mrs. Stout or to her husband, and that Jannette took up the certificate; that had not this been done, the title of Emily would have been extinguished; that Titsworth advanced "the money to make the redemption with;" and that, after paying to redeem, Jannette sold the land to Race, and she and Titsworth made to Race a warranty deed for the same, and received from him the sum of $2200.

The case was brought to issue, proofs taken, the venue was changed to the City Court of Aurora, where the cause was brought to a hearing, and a final decree rendered for a partition of the land, setting off one-half thereof to Mary F. Stout, the complainant. This decree was reversed in this court upon the ground that Mary F. Stout could not have partition equitably, except subject to an equitable lien of the guardian of Emily for the payment of one-half the redemption money, and the cause was remanded to the circuit court of Kendall county for further proceedings. (See *Titsworth et al.* v. *Stout,* 49 Ill. 78.)

When the case came again before the City Court of Aurora, Race, by leave, filed a cross-bill, not claiming to enforce from

Mrs. Stout the payment of one-half of the redemption money, as suggested by this court, but claiming that he owned all the land, as an equitable assignee of the certificate of purchase given to Phillips at the sale under the mortgage.  In that cross-bill, among other things, he says, "that before the time of redemption expired, Jannette, *as stated in her answer*, by raising money of A. D. Titsworth, as stated in the answer, paid master's certificate of sale of property," and he asks that the facts set up in the answer "may be taken as part of this his bill."  This cross-bill was answered by Mary F. Stout, and also by Jannette, in April, 1871, by general denials.

On April 13, 1871, a settlement of the controversy with Mrs. Stout was agreed upon by counsel for Titsworth and Race, with counsel for Mrs. Stout, and a stipulation signed and filed providing that Titsworth and Race should pay Mrs. Stout $750 for her interest in the premises, and should pay the unpaid costs in the suit, and that Mrs. Stout should convey all her interest in the property by quitclaim deed to Race, and that Race might take a decree on his cross-bill, holding Mrs. Stout harmless from costs.  On the same day, the record shows that the cross-bill of Mrs. Earl, and her answer to the cross-bill of Race, and the answer of Mrs. Stout to the cross-bill of Race, were all withdrawn.  The cross-bill of Race was taken for confessed as to all of the defendants thereto, except as against the minor, Emily Parkhurst.  For her a guardian *ad litem* was appointed, and a formal answer for her was filed.  On the next day the cause was heard, and then was made and entered the decree to reverse which this writ of error is brought by Emily Parkhurst, now Emily Speer by marriage.  That decree was as follows:

"The above cause coming on to be heard by stipulation of record in vacation, and on motion of George A. Race the cross-bill of Jannette Earl is dismissed and stricken from the docket, and the answer of Jannette Earl, Mary F. Stout and

Peter S. Stout to the cross-bill of complaint having been withdrawn, the said cross-bill of George A. Race is ordered to be taken as confessed against Jannette Earl, Abraham D. Titsworth, Mary F. Stout and Peter S. Stout. And it appearing to the court that Emily Parkhurst is a minor, A. B. Smith was appointed guardian *ad litem* for said Emily, and the answer of the guardian *ad litem* having been filed, this cause came on to be heard upon the bill, answer, replication, cross-bill of George A. Race, and answer; and the material allegations of the cross-bill of George A. Race having been established by proof heard in open court, and it also appearing, by agreement between complainants Mary F. Stout and George A. Race, that George A. Race should have a decree against said complainant Mary F. Stout, and have a decree according to the prayer of his cross-bill of complaint; and it further appearing to the court that Nahum Parkhurst and Reuben P. Parkhurst purchased the property of Hiram Ferris, as charged in the cross-bill of complaint, and had given back a mortgage to secure the payment of the purchase money; that Amos T. Parkhurst purchased said mortgage of Ferris, and filed his bill of complaint to foreclose said mortgage in the Kendall county circuit court, making Nahum Parkhurst, Emily Parkhurst, Jannette Parkhurst, (now Jannette Earl,) parties defendant; that a decree of foreclosure in the usual form was had and obtained; that on the 5th day of August, 1865, the property was sold under said decree by the master in chancery of said court to Benjamin F. Phillips for $1700, and after paying the decree and all the costs and interest thereon, there was remaining in the hands of the master in chancery the sum of $609.24; and it further appearing that Mary F. Stout had purchased all the right, title and interest of Nahum Parkhurst of, in and to said property, by order of court the said surplus arising from said master's sale was equally divided between Mary F. Stout, of the one part, and Jannette Earl and Emily Park-

hurst of the other part; and it further appearing that Benjamin F. Phillips had assigned said certificate of sale to Mary F. Stout; and it further appearing that on the 31st day of August, 1866, Jannette Earl and Abraham D. Titsworth paid Mary F. Stout the sum of $1870, and she received the sum, and Jannette Earl and Abraham D. Titsworth became and were the equitable owners and holders of said certificate of purchase made and executed by said master in chancery, which certificate of the master in chancery is in the words and figures following, to-wit:

" 'STATE OF ILLINOIS, } ss.
    *Kendall County.* }

" 'I, Joseph W. Helme, master in chancery in and for the county of Kendall, in the State of Illinois, of the Kendall county circuit court, sitting in chancery in said State, do hereby certify that by virtue and in pursuance of a decree of said court made and rendered at the special May term of said court, A. D. 1865, in a certain cause then therein pending, by bill in chancery to foreclose a mortgage, in which Amos T. Parkhurst was complainant, and Nahum Parkhurst, Jannette Parkhurst and Emily Parkhurst were defendants, I did, on the 5th day of August, 1865, at ten o'clock in the forenoon, at the north door of the old court house, in the town of Oswego, in said county, pursuant to notice thereof given as required in and by said decree, sell at public auction to Benjamin F. Phillips, for the sum of $1700 cash in hand, the following described premises, real estate situated and being in the said county of Kendall and State of Illinois, to-wit: (Here follows description of land, same as described in petition). The said Benjamin F. Phillips being the highest and best bidder for the same, and said premises were then and there struck off and sold to the said Benjamin F. Phillips on his bid for the said sum of $1700, above mentioned.

                                  JOSEPH W. HELME, [Seal.]

Dated August 5, 1865.    *Master in Chancery.*'

"And said certificate of sale bears the following indorsements, to-wit:

"'STATE OF ILLINOIS, } ss.
     *Kendall County.*

"'This certificate was filed for record this 7th day of August, 1865, at three o'clock P. M., and duly recorded in book L of Deeds, page 425.          A. M. HOBBS, Recorder.'

"'For a valuable consideration I assign the within certificate of sale to Mary F. Stout.

Dated August 31, 1866.          BENJAMIN F. PHILLIPS.'

"'Subscribed to and acknowledged before me this 31st day of August, 1866.

[Notarial Seal.]          ED. A. BRADLEY, N. P.'

"That it further appearing to the court that no person has redeemed from said sale, and the owners of said certificate are entitled to a deed under the same, conveying and assuring to the owners and holders thereof a perfect and complete title to said real estate in said certificate described, being the real estate in controversy in this suit; and it further appearing to the court that Jannette Earl and Abraham D. Titsworth, after having acquired such equitable title to said master's certificate, sold and conveyed all right, title and interest which they had therein to George A. Race, and that George A. Race is the equitable owner and holder of said master's certificate, and is entitled to all the benefits arising and growing out of such ownership thereof; and it further appearing that no person has redeemed, or attempted ·to redeem, from said sale, and that the equitable owner and holder of said certificate is entitled to a deed thereon:

"It is therefore ordered, adjudged and decreed, that the land in this decree mentioned and described aforesaid be the property of George A. Race, and that all right, title and interest of Jannette Earl, Mary F. Stout, Peter S. Stout and Emily Parkhurst, or either of them therein, be and is hereby

declared to be ended and extinguished and determined, and they and each and every of them are perpetually enjoined and restrained from setting up or claiming any title thereto, and the master in chancery of this court is hereby appointed a special commissioner to make, execute, acknowledge and deliver to George A. Race a deed of the premises in controversy, conveying and assigning to said George A. Race all right, title and interest of the said defendants, and each of them, of, in and to the said premises, which deed so executed by said master in chancery shall have the same force, validity and effect as if the master in chancery of Kendall county had made a deed to the owners and holders of said certificate of sale after the time of redemption had expired. It is further ordered that George A. Race pay all costs of this proceeding."

The proofs in the record at that time, showing a redemption had in part been made, were:

*First*—The testimony of Jannette Earl, that "on the 2d or 3d of August, 1866, I went in company with A. D. Titsworth and tendered him" (Phillips) "the money due on the certificate of sale, $1870. He would not take it. I then went and deposited the money with Judge Helme, the master in chancery."

*Second*—The testimony of Titsworth, saying: "I went with Mrs. Earl and saw Phillips. He would not take the money. It was August 2d or 3d, 1866. We then went and deposited the money with Judge Helme, the master in chancery. Mrs. Earl and I afterwards conveyed the property to Race for $2200. The tender to Phillips was before the year had expired."

*Third*—The assignment of the certificate of sale by Phillips to Mary F. Stout, dated August 31, 1866.

*Fourth*—The official certificate of the master in chancery, that on August 2, 1866, he received of Mrs. Earl the sum of $1870, (as redemption from the sale in question,) and for

the use of the holder of the certificate, and that on August 3, 1866, he went to Phillips, the purchaser, and tendered this redemption money to him, and that Phillips refused to receive the same, and that afterwards, on the 31st of August, 1866, Mary F. Stout presented to him the certificate of purchase duly assigned to her, and demanded and received the redemption money, and gave her receipt for the same. And lastly, the testimony of Peter Stout, the husband of Mary, saying that he "was present when she received the redemption money from the master, and counted the money for her." No proofs preserved in the record tend to contradict this testimony and evidence.

Mr. EUGENE CANFIELD, for the plaintiff in error:

1. A minor is incapable of appearing in court as a defendant, by the uniform practice of our courts, save by a guardian *ad litem*, appointed by the court, and acting as its officer as well as for the infant. *Peak* v. *Shasted*, 21 Ill. 137; *Hall et al.* v. *Davis*, 44 id. 494; *Kesler* v. *Penninger*, 59 id. 134; *Enos et al.* v. *Capps*, 12 id. 255.

The guardian *ad litem* can not waive any of the rights of the infant whom he represents, by answer or otherwise. *Cartwright* v. *Wise et al.* 14 Ill. 417; *McClay et al.* v. *Norris*, 4 Gilm. 370; *Chaffin* v. *Kimball*, 23 Ill. 36; *Rhoads, Exr.* v. *Rhoads et al.* 43 id. 239; *Fischer* v. *Fischer*, 54 id. 231; *Turner et al* v. *Jenkins*, 79 id. 228.

And it is the duty of the court to see that all the rights of the infant are properly protected by the guardian *ad litem*. *Peak* v. *Pricer*, 21 Ill. 164; *Rhoads* v. *Rhoads*, 43 id. 239.

2. The decree, though, should be reversed upon the merits. Mrs. Stout, in her petition, had expressly set out that the plaintiff in error was the owner of an undivided half of the land, subject to the dower rights of her mother. The defendants, Jannette Earl, Race and Titsworth, had expressly admitted this in their answer, and set up the redemption by

her guardian from the sale under the decree of foreclosure. These allegations had been proved, and this court had judicially determined that such were the facts and such the rights of the plaintiff in error. They ought not to have been permitted in any manner to allege or bring it about to the contrary.

The plaintiff in error became of age about a year since, and brings this case to this court, within the time limited by the statute, on error.

Mr. CHARLES WHEATON, for the defendant in error George A. Race:

In the first place, it appears that Jannette Earl was the lawful guardian of plaintiff in error, and she appeared in the case in the Kendall circuit court, by her said guardian, and the guardian put in an answer for her. This was a sufficient appearance and answer, and just as good as though done by a guardian *ad litem*. The chapter of the statute concerning partition provides (Rev. Stat. 1874, chap. 106, sec. 4,) that infants may appear by guardian or conservator, or the court may appoint a guardian *ad litem*. So an appearance of an infant by her guardian, and an answer by that guardian, is as good as an appearance by a guardian *ad litem*. (See *Peak* v. *Shasted*, 21 Ill. 137; *Herdman et al.* v. *Short*, 18 id. 59.) Moreover, a legally appointed guardian has greater authority to bind the ward by his acts and agreements than a guardian *ad litem*. A guardian has power to bind his ward by submitting his rights to arbitration. *Weed* v. *Ellis*, 3 Caines, 253.

Infants are as much bound as adults by the action of those who conduct their defence, provided their conduct is *bona fide*. 1 Daniell's Chancery Practice, 123 (3d Am. ed.)

An absolute decree is as binding against an infant as an adult, and can only be impeached for fraud or collusion. 1 Daniell's Chancery Practice, 153.

The decree finds that Race is the equitable owner and holder of the master's certificate of purchase, and is entitled to all the benefits growing out of such ownership, and specifically recites in detail the facts in evidence. This is equivalent to a certificate of evidence being filed. *Jones* v. *Nilly,* 72 id. 449; *Durham* v. *Mulkey,* 59 id. 91; *Martin et al.* v. *Hargardine,* 46 Ill. 323; *Kidder* v. *Sholtz,* 36 Ill. 478; *Croskey* v. *Northern Manufacturing Co.* 48 id. 481.

Where a decree finds facts from the evidence, and they are sufficient to sustain the decree, no other preservation of the evidence is necessary. The court will presume the finding correct, unless a certificate of evidence shows a different state of facts proven on the trial. *Walker et al.* v. *Abt et al.* 83 Ill. 226; *Rhoads et al.* v. *Rhoads,* 88 id. 139; *Paris and Danville R. R. Co.* v. *Henderson,* 89 id. 85.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

It is objected by counsel for defendants in error that this writ of error comes too late. Counsel say, "nothing appears in the record to show at what time the plaintiff in error attained her majority, or that she has brought her suit to this court within the statutory period. For all that appears here, her claim is a stale one." This question can not be raised on the record in this case by mere suggestion in the argument in the case. In the absence of a plea alleging a bar, or some other matter in the record showing that this writ comes too late, we can not properly entertain the question.

When this case was at a former time before this court, on an appeal taken by Race and the other defendants to the original petition, it was said by Mr. Justice LAWRENCE, speaking for the court: "The mother of Emily Parkhurst, having the right of dower in an undivided half of the premises, and being the guardian for Emily, redeemed the premises, within twelve months of the sale, by paying to the master the

requisite amount. The master tendered the money to Phillips, who refused to receive it, saying the matter was out of his hands, and a few days afterwards Mrs. Stout demanded and received the money, giving her receipt to the master. * * * The lien under the mortgage was thus cancelled." And upon this statement of the facts, this court then adjudged that "the mother of Emily Parkhurst, who redeemed, * * * has a valid claim against Mrs. Stout, which amounts to an equitable lien on the land while in her hands;" and held that the court "did err in not providing in its decree that complainant (Mrs. Stout) should take her allotment, subject to the equitable lien of *the guardian of Emily Parkhurst,* for the payment of one-half the redemption money." The decree, on that ground, was reversed, and that this might be done, the case was remanded to the court below.

When the mandate of this court was filed in the court below, instead of entering the decree suggested by this court, the court below, among other things, permitted Race to file a cross-bill. The controversy with Mrs. Stout was brought to an end by the purchase of her interest by Mrs. Earl and Race, for the benefit of Race. The subsequent proceedings concerned no one but Race and Emily Parkhurst. A hearing was had between them (she appearing only by a general answer by a guardian *ad litem*). The proofs supporting the truth of the statement that a valid redemption from the master's sale under the mortgage had been made within the twelve months succeeding the sale, and which were considered by this court, were at the time of this last hearing all in the record, and formed a part of the case, although the attention of the court may not have been called to them. They consisted of the direct testimony of Mrs. Earl, Mr. Titsworth, and the certificate of redemption by the master, and the testimony of the husband of Mrs. Stout that he was present when Mrs. Stout (to whom the certificate of purchase was assigned) accepted the redemption money from the master.

At the time of the hearing, also, there was nothing in the pleadings which could authorize the introduction of proof tending to show that no redemption was ever made. . Race had said, in substance, in his answer to Mrs. Stout's original bill (which was a joint answer by him and Mrs. Earl and others), that a redemption from the master's sale had been successfully made, so the title of Emily Parkhurst was saved from being extinguished by the sale. In his cross-bill, under which the last decree was made, there is no allegation that there was no redemption. On the contrary, he said in his cross-bill, "that before the time of redemption had expired, Jannette Earl, as stated in her answer" (which was the joint answer above mentioned), "by raising money of A. D. Titsworth, as stated in the answer, paid for the master's certificate of sale of the property, all of which facts are fully stated in the answer, which he asks may be taken as a part of this his bill." So it appears that by the allegations of this cross-bill (taking the details in the answer as a part thereof), there was a redemption before the time of redemption expired.

It was, then, clearly an error in the court below to find and recite in this last decree that "no person has redeemed or attempted to redeem from said sale." On that error the decree is based, which holds that the certificate of purchase having been bought from Mrs. Stout by Mrs. Earl, and sold to Race, thereby Race became, in equity, entitled to a master's deed, under the sale by the master under the decree of foreclosure of the mortgage.

It is true, that in the trial of a cause in chancery, where it appears that oral evidence was heard which is not preserved in the record, and where the decree contains a recital of the facts proven, this court, in the absence of any matter in the record to repel such a presumption, will presume that the findings and recitals of the decree were fully sustained by proof not preserved in the record. But where such recital is of a supposed fact directly contrary to the finding of this

court previously had in the case, and of a supposed fact not alleged in the pleadings, but at variance with the pleading of the party relying upon such supposed fact, and is also overwhelmingly proven not to be a fact by proofs which are preserved in the record, such a presumption can not prevail. The property having been redeemed, the legal title remained in Emily Parkhurst. It is true, that it would seem to have been liable to an equitable lien, in favor of her guardian, for one-half of the money expended in making the redemption. It may be that by the subsequent purchase of Mrs. Stout's interest, and the transactions between Mrs. Earl and Race, when she undertook to sell this land to him for money to repay Titsworth, and by reason of other money which may have been expended for her ward, some rights and equities passed to Race, but they are not stated in his cross-bill; and it may be that by a proper cross-bill in this case such rights and equities may properly be enforced. But these questions are not before us, and need not be passed upon.

It is exceedingly clear that the deed by Mrs. Earl to Race did not divest the legal title of Emily to an undivided half of this land, and it is equally clear no title could properly be deduced through the sale under the mortgage after that sale had been rendered inoperative by redemption. If Race has any equities or rights as against Emily, he has misconceived them in his cross-bill. This decree must be reversed. As Race may have rights and equities which, under proper pleadings, might have been protected or enforced, the cause will be remanded, that he may be allowed, on proper terms, to present other and appropriate pleadings, if he so desires, and may have an opportunity to assert and sustain the same, as he shall be advised.

The decree is therefore reversed, and the cause remanded for further proceedings not inconsistent with the views herein expressed.      *Decree reversed.*

Scott, J., dissenting.