## Charles T. Gorham

### *v.*

## John Farson *et al.*

*Filed at Ottawa January 25, 1887.*

1. CONTRACT OF SALE—*of a contract of sale embraced in a lease of the same premises—rights of the parties arising thereunder.* A written agreement for the lease of certain premises, for the term of three years, at a monthly rental of $100, payable at the end of each month, contained also a contract for the purchase and sale of the premises within three years from the date thereof, for the sum of $15,000, of which one-third was to be paid in cash, and the balance in one and two years, with six per cent interest on the deferred payments, the contract providing that the payment of rent should cease upon the first payment of the purchase money being made: *Held*, that there was no connection between the leasing and the sale of the property, further than that when the terms of the sale were complied with, the rent should cease, and that no failure to pay rent could affect the right to purchase or create a charge upon the premises, and that the right to purchase was not postponed to the end of the term.

2. JUDGMENT LIEN—*JUDICIAL SALE—in respect to debtor's interest in land, held under a contract of purchase.* Where a lease to a party contains an absolute contract for the sale of the demised premises by the lessor to the lessee, upon certain stated terms, and also certain other real estate, a judgment against the lessee will become a lien on the lessee's interest in the property; and any subsequent change in the terms of the sale, adding further burdens on the purchaser, will not affect the rights of the judgment creditor.

3. A sheriff's deed for land sold under execution will relate back to the commencement of the lien of the judgment, and will pass whatever interest the debtor then had in the property sold; and if that interest arose under a contract of purchase, the vendor and vendee can not afterward make any material change in its terms, to the prejudice of the grantee in the sheriff's deed.

4. While a vendor may consummate a contract for the sale of land by conveying to his vendee and taking back notes for the price, secured by mortgage on the property, as provided in the contract, yet, after the lien of a judgment against the vendee has once attached on his interest under the contract, it is not allowable for such vendor thereby to destroy or sensibly impair the vendee's interest in the property, as fixed by the contract when the lien attached, hence they can not incumber that interest with other debts, nor for a greater rate of interest than that originally provided.

5. A leased to B eight lots, for the term of three years, at a rental of $100 a month, the lease containing a contract for the sale of the premises to the

lessee within the three years, for $15,000, one-third to be paid in cash, and the balance in one and two years thereafter, for which notes were to be given, bearing six per cent interest, secured by deed of trust on the property, and also containing a contract for the sale to the lessee of three other lots, at $1300, payable in one year, with like interest. At the date of such lease and contract there was a judgment in favor of C, against B, which became a lien on his interest. B formed a partnership, which borrowed of A $3000. The firm failed, owing this sum, and $200 for rent. A conveyed the property to B, who thereupon gave his four promissory notes, each for $4500, the first payable in six months, and the others on May 1, in the years 1884, 1885 and 1886, bearing seven per cent interest, secured by deed of trust on all the lots. C purchased·the lots under his· judgment, and obtained a sheriff's deed: *Held*, that, as against C, the lots could not be charged with the $3000 for money loaned, and $200 rent, nor with more than six.per cent interest, nor could the eight lots be charged with the price of the other lots, nor the latter with the price of the former.

6. ALLEGATIONS AND PROOFS—*what constitutes a variance, as to the ownership of the debt, on foreclosure.* A bill to foreclose a trust deed securing the payment of notes, alleged that one H. was the holder and owner of the notes, while the decree, without any amendment to the bill, or cross-bill being filed, found that P., K. & Co. were the owners of the notes, and ordered payment to them: *Held*, that there was clearly such a variance between·the allegations and proofs, and the allegations and the decree, as to the ownership of the notes, as to render the decree erroneous.

7. TENDER—*whether necessary, when the creditor declares he will not accept.* Where a creditor, in advance of an offer to pay, or in response to an offer to pay, informs the party under obligation to pay that he will not accept the amount actually due, in discharge of the indebtedness, the latter will be released from the duty of making such tender.

8. ACCELERATION OF MATURITY OF DEBT—*for non-payment of installment due—as against a judgment creditor of the same debtor.* A vendor of real estate, after the lien of a judgment had attached to the interest of the vendee, conveyed the land to the vendee, in accordance with the contract of sale, taking from the latter his notes for the purchase money and another and distinct indebtedness of $3200, bearing seven per cent interest, instead of six, as provided in the contract, secured by a trust deed, containing a provision authorizing the holder of the notes to declare them all due for a failure to meet any payment when due. The judgment creditor having obtained a sheriff's deed under his judgment, called upon the vendor, the holder of the notes, to ascertain the sum due him under his contract of sale for the purchase money, who refused to state such amount, and demanded the full amount due on the notes, with seven per cent interest, declining to accept any less sum. The vendor thereupon declared all the notes due, and caused a bill to be.filed to foreclose.the trust deed for all the notes: *Held*, that, under the

circumstances, the vendor was not entitled to declare the unmatured notes due, and foreclose for the same, as against the grantee in the sheriff's deed.

9. MORTGAGES—*mortgagee in possession—of his rights and duties—as to the payment of taxes.* Where a mortgagor turns over the mortgaged premises to the mortgagee, the latter will thereafter occupy the position of mortgagee in possession, and, as such, it will be his first duty to pay, from the rents and profits arising therefrom, all claims for taxes, and the members of the firm of which the mortgagor was a member will have no right to disturb such possession; and if the mortgagee suffers the possession to be taken from him, without resistance, he will not thereby be discharged from his duty of relieving the property of taxes.

10. SAME—*foreclosure—as against judgment creditor, or a purchaser of equity of redemption.* Where the purchaser of two distinct parcels of land, at distinct prices, after a judgment lien has attached to his interest in both purchases, gives his notes for the entire purchase money, secured by a deed of trust upon all the property, on bill to foreclose the trust deed it is error to charge the entire purchase money against each of the tracts, as against the judgment creditor having the right to redeem.

11. Where the mortgagor's equity of redemption has passed from him by sale under execution, so that he has no interest in the mortgaged premises, the mortgagee's right of foreclosure will be limited to the amount that may equitably be enforced, as against the holder of the equity of redemption, notwithstanding the mortgagor may be liable for a greater sum.

12. SAME—*when strict foreclosure not proper.* Where the amount the owner of the equity of redemption is required to pay to redeem from a foreclosure sale is less than the value of the property, there can be no strict foreclosure, under our practice.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. H. M. SHEPARD, Judge, presiding.

On the 1st day of May, A. D. 1881, Preston, Kean & Co., by their agent, James Payne, entered into an agreement in writing, under seal, with Gilbert A. Colby, whereby they demised to him the smelting works located on block numbered 4, (except streets and alleys,) of Crocker & Stone's subdivision of ten acres north of and adjoining the west twenty-two and one-half acres of the north five-eighths of the north-east quarter of section 4, township 38 north, of range 14 east, of the third principal meridian, Cook county, Illinois, for the

term of three years, ending on the 30th day of April, A. D. 1884, for the monthly rental of $100, payable at the end of each month. They were to.pay all taxes on the premises as they then were, during the term, and Colby was to pay taxes on improvements added by him; and Colby agreed to purchase, and they agreed to convey to him, the premises, within three years from the date of the agreement, for the sum of $15,000, of which $5000 was to be paid in cash, and the remainder was to be paid, $5000 in one year and $5000 in two years from the date of the cash payment, with interest at the rate of six per cent per annum on the deferred .payments. Upon making the cash payment, Colby was to cease to pay rent, and he was to secure the deferred payments by mortgage or deed of trust on the property. In case Colby failed to purchase, Preston, Kean & Co. might enforce the agreement, and retain all the machinery and improvements put upon the premises by him, as agreed damages for breach of the contract. Colby also agreed to buy, and Preston, Kean & Co. to convey to him, lots 6, 7 and 8, of block 4, of Day's subdivision of part of the said north-east quarter of section 4, aforesaid, for the sum of $1300, payable in one year from date, with interest thereon at the rate of six per cent per annum.

Colby formed a co-partnership with his son and one Gardner, under the firm name of Colby, Gardner & Co., for the purpose of manufacturing plows, and that firm took possession of the property thus demised, and placed upon it improvements and machinery of value, and on the 31st of May, A. D. 1881, the firm of Colby, Gardner & Co. borrowed $3000 of Preston, Kean & Co., and gave their promissory note therefor, payable within ninety days from that date. The firm failed on the 1st day of October, A. D. 1881, being then still indebted to Preston, Kean & Co. for the full amount of the loan, and the further sum of $200 for rent of said premises. It was then agreed between Colby, and Preston, Kean & Co.,

that they should at once convey the premises to him, and that he should then convey them in trust, to secure the sum before agreed upon as their price, and also the indebtedness of the firm of Colby, Gardner & Co. for borrowed money and rent. This agreement was, on the same day, accordingly carried out. Preston, Kean & Co. conveyed, absolutely, to Colby, and he conveyed the premises, in trust, to John Farson, as trustee, to secure the before named indebtedness, evidenced by four promissory notes of that date, executed by Colby to his own order, and by him duly indorsed, all bearing interest at the rate of seven per cent per annum,—one for $4500, due six months after date, and the other three for $4500, due, respectively, on the 1st day of May, in the years A. D. 1884, 1885 and 1886. A provision in the deed of trust authorized the holder, in case of default in the payment of the principal or interest, or any part thereof, to declare the whole of the notes due and payable. At the same time that these instruments were executed, Colby, Gardner & Co. sold and transferred all their stock, materials, machinery and personal property then on said premises, to Preston, Kean & Co., upon an agreement between the parties that the same should be sold, and the proceeds applied to the payment of the note for $4500, in which was embraced the indebtedness for borrowed money, and for rent. Preston, Kean & Co. afterwards took possession of said personal property, and sold a portion of it, realizing therefrom $436.15. Gardner then filed his bill for a dissolution and settlement of the partnership, making Preston, Kean & Co. parties. A receiver was appointed, and Preston, Kean & Co. turned over to him the residue of the personal property in their hands, and he afterwards sold it, under an order of the court, for $311.45. The receiver also sold the interest of the firm in the real estate to Allen Breed, on the 11th of April, A. D. 1882, for the sum of $345, which sale was subsequently confirmed by the court.

Charles T. Gorham recovered a judgment in the Superior Court of Cook county, at its October term, (being the 10th day of October, A. D. 1880,) against Gilbert A. Colby, for the sum of $5500, and costs of suit, and immediately thereafter he caused an execution to be issued upon this judgment, and placed in the hands of the sheriff of Cook county. On the 8th day of September, A. D. 1882, Gorham sued out an *alias* execution on his judgment, (nothing having been realized on the first execution,) which was then delivered to the sheriff, and by him levied on the lots described in the agreement between Colby and Preston, Kean & Co., of the 1st day of May, A. D. 1881. Breed thereupon filed his bill in chancery, in the Superior Court of Cook county, against Gorham and the sheriff, to enjoin a sale of the property under this levy, upon the ground that the judgment had not become a lien upon it before he received a conveyance of it; but the trial court, on hearing, dismissed the bill, and that ruling was affirmed, on appeal, first, in the Appellate Court, and afterwards in this court. (*Breed* v. *Gorham et al.* 108 Ill. 81.) On the 13th of February, A. D. 1883, the sheriff sold the property at public sale, under this levy, Gorham becoming the purchaser, and receiving a certificate of sale. In February, A. D. 1884, E. A. Crane, the agent of Gorham, on behalf of Gorham, made application to Preston, Kean & Co. to ascertain how much was due on the contract with Colby, of May 1, A. D. 1881, but they refused to state the amount that was due, and demanded of him payment of $19,500, and interest thereon, at the rate of seven per cent per annum, from the 1st day of October, A. D. 1881. On the 20th day of May, A. D. 1884, Gorham received a sheriff's deed of the property.

The present bill was filed by John Farson, against Gilbert A. Colby, Charles T. Gorham and Frederick W. Hayes, on the 3d day of May, A. D. 1884, in the Superior Court of Cook county. It alleges, that on or about October 1, A. D. 1881, Gilbert A. Colby was indebted to Preston, Kean & Co. for the

entire purchase money of the real estate therein described, in the sum of $19,500, and executed his four promissory notes therefor, and then proceeds to describe the promissory notes and deed of trust securing them, of October 1, A. D. 1881. It then alleges that Preston, Kean &·Co. indorsed over the said notes, and delivered them to Frederick W. Hayes, who was then·the owner and holder thereof; that no part of said notes has been paid; that Hayes has, by virtue of the terms of the trust deed, declared all of the notes, and the interest thereon, due, and requested complainant to foreclose, etc.; that said notes were, in fact, given to secure the entire amount of purchase money for the real estate described in the trust deed; that Colby is insolvent, and a non-resident; that there are due and unpaid $400, in taxes and assessments; that $19,500, with interest thereon, at the rate of seven per cent, from the 1st day of October, A. D. 1881, remains due and unpaid to Hayes; that the premises are a meagre and scant security, and that Colby is insolvent. It is further stated, Allen Breed, Charles T. Gorham, Augustus D. Lamb, and others, have some interest in the premises junior to the mortgage; asks that they be made parties; prayer that the usual decree be made for the sale of the premises; that complainant be appointed special commissioner to make the sale, and be allowed his fees, and solicitor's fees, etc. Frederick W. Hayes filed his answer to the bill on the 3d of May, A. D. 1884, admitting the allegations of the bill to be true, and particularly alleging that he is the owner and holder of said notes and trust deed; that he has declared all of ·said notes and interest due, and that he has requested the complainant to enter into the possession of the premises in the bill described, to collect and receive the rents thereof, and to foreclose the mortgage. Colby answered on the 13th of May, A. D. 1884, confessing the allegations in the bill, and admitting there to be due on the notes, etc., $19,500, with interest thereon, at the rate of seven per cent, from October 1, A. D. 1881.

On the 14th of May, A. D. 1884, William D. Preston was appointed receiver, and on the 17th of May, A. D. 1884, the court authorized the receiver to lease the east half of the property to Augustus D. Lamb, at $110 per month, from May 1, A. D. 1884, to April 30, A. D. 1885. On the 3d of June, A. D. 1884, Charles T. Gorham entered his appearance in the cause, and on the 14th of the same month he filed his answer, in which he denies that Colby was ever indebted to Preston, Kean & Co. in the sum of $19,500, for the purchase price of the premises; that he has no knowledge of the trust deed except hearsay; denies that the trust deed ever was, or now is, a lien upon the premises, except subject to the lien of defendant; avers that the trust deed has been paid; denies that Frederick W. Hayes ever was or is the owner of the notes; denies that he could declare them due, to the prejudice of defendant; denies that Hayes authorized complainant to foreclose the mortgage; denies that Colby is insolvent, and that the premises are a scant security; avers that the property is worth $30,000, and is increasing in value; sets up that he recovered judgment against Colby in that court, in 1879, for $5500, and immediately issued execution thereon; that the next year Colby purchased the premises for $16,200, and defendant's judgment immediately became a lien thereon; that after his lien had attached, Colby and Preston, Kean & Co. conspired together to defraud him out of his lien, and for that purpose they executed the trust deed and notes in question, and they now seek to obtain a vendor's lien for $19,500, or $3000 more than Colby paid for the same; that on April 15, 1882, a sale of Colby's interest in the premises, but subject to the defendant's lien, was made by order of the court, and that Preston, Kean & Co. bought it, and paid for it, but caused it to be deeded to Allen Breed, without his knowledge or consent, and that Preston, Kean & Co.'s mortgage title then passed with the title so purchased; that defendant was not a party to that suit; that by virtue of the defendant's prior judgment

lien the premises were sold February 14, 1883, and he became the purchaser; that there was no redemption from that sale, and on May 20, A. D. 1884, he received a sheriff's deed, and his title became absolute. The litigation with Breed is then set out, alleging that Breed, in fact, had no interest in it, but that his name was used by Preston, Kean & Co. to subserve their own ends. It is then further alleged, after repeating that the purchase price agreed to be paid by Colby for the property was $16,200, that Preston, Kean & Co. have received $3500 from Colby, and $4000 in rents, and that there is only $12,000 to $15,000 due them; that the property is worth $30,000, is now rented for $2400 per annum, and would readily rent for $3500. Defendant further alleges that he has endeavored to settle the claim of said mortgage, and solicited a statement of the amount claimed thereon, but that Preston, Kean & Co. refused it; that he is ready and willing, and offers, to pay and satisfy such portion of the deed of trust as has not been paid, and as is a lien on the premises; offers, also, to pay all taxes assessed against the premises properly chargeable against him, and alleges that Hayes is insolvent, and has no interest in the premises, and it concludes by asking that the bill be dismissed.

On the 11th of July, A. D. 1884, the court ordered that the receiver turn the property over to Gorham. On the 16th of December, A. D. 1884, the complainant, by leave of court, amended his bill by dismissing as to defendants Beers, Benj. D. Lamb, E. Dayton and Augustus S. Lamb, and adding David Preston, Samuel A. Kean and James Payne, constituting the firm of Preston, Kean & Co., as parties defendants; and thereupon they filed their answer, admitting the allegations as set forth in complainant's bill, reserving, however, all their rights as judgment creditors of said Gilbert A. Colby, individually or jointly, with any other parties. The cause was referred to the master in chancery, who made report on the 22d day of June, A. D. 1885. Exceptions were sustained

28—119 ILL.

to this report, and he was directed to report again, under certain directions given by the court.

On the 22d of September, A. D. 1885, Preston, Kean & Co. and Hayes filed supplemental answers, in which they alleged, that, since the filing of the answers to the original bill, "Hayes assigned and delivered these notes to Preston, Kean & Co., who now are the owners thereof, and who now ratify all the acts herein of Farson and Hayes." The master in chancery filed an amended report on the same day, which was approved by the court, and afterwards, the cause coming on to be heard, it was decreed as follows :

"And this cause coming on for final hearing, upon the bill and amendments, the answers of Charles T. Gorham, Gilbert A. Colby, Preston, Kean, Payne and Hayes, the amended and supplemental answers of Preston, Kean, Payne and Hayes, and the defaults of others, the replication and report of the master, filed June 22, 1885, and the exceptions of said Gorham, and the supplemental report of the master, filed September 22, 1885, and oral testimony heard in open court, and the court being fully advised in the premises, doth find, that the allegations in said bill contained are true as therein stated, and the court finds there is due Preston, Kean & Co. from Gilbert A. Colby, on these notes, and for solicitors' fees, $24,438.86, with interest at six per cent, from June 8, 1885, and costs; that Charles T. Gorham, by reason of having recovered judgment in the Superior Court of Illinois, prior to the contract for sale of the premises to Colby, and having levied on the premises, and acquired title thereto by virtue of such levy and sale thereunder, ought to be allowed to redeem said lots 6, 7 and 8, in Day's subdivision, for the sum of $1642.35, and interest at six per cent, from September 21, 1885, and the payment of the costs of this suit to be taxed, and to redeem lots 1 to 8, inclusive, of block 4, of Hubbard, Crocker & Stone's subdivision, for the sum of $18,825, and interest at six per cent, from September 21, 1885, and the

payment of the costs of this suit to be taxed,—such redemption or redemptions to be made within thirty days from entry of this decree; that the two tracts of land be offered for sale separately; that the defendant Hayes has no further interest in this suit, he having, during its pendency, transferred all interest in said notes and mortgage, mentioned in complainant's bill of complaint, to defendants, Preston, Kean & Co.; ordered, that defendant Colby pay to Preston, Kean & Co., within ten days from the entry of the decree, $24,438.86, with interest at six per cent, from June 8, 1885; also, the costs of suit to be taxed; ordered, that Gorham may redeem lots 6, 7 and 8, of Day's subdivision, and lots 1 to 8, inclusive, of block 4, of Hubbard, Crocker & Stone's subdivision, within thirty days, and on the terms mentioned in the findings. In case Colby or Gorham do not redeem as above, then these premises, (describing them,) with the buildings, improvements and fixtures, or so much thereof as may be sufficient to realize the amount so due said Preston, Kean & Co. from said Gilbert A. Colby, principal and interest, and also the costs of this suit, including the fees, disbursements and commissions on the sale herein mentioned, and which may be sold separately without material injury to the parties interested, to be sold at public vendue, for cash in hand, to the highest and best bidder; that the master proceed to advertise and sell, and give usual certificate of the sale to the purchaser; that he retain his fees, disbursements and commissions on said sale; that he pay to the officers of this court their costs of this suit, and that out of the remainder of said proceeds he pay to said Preston, Kean & Co., or to their solicitor, Morton Culver, in case said lots in said Day's subdivision be sold, the sum of $1642.32, and interest thereon at six per cent, from September 21, 1885, and from the sale of the other eight lots that they pay Preston, Kean & Co. $18,825, and interest at six per cent, from September 21, 1885. In case that said premises shall sell for more than

sufficient to pay the two amounts of $1642.32 and $18,825, respectively, and interest and costs in this suit, then that said master, after making payments as aforesaid, bring such surplus money into court; ordered, that all defendants be forever barred, foreclosed from all equity of redemption and claim to these premises, if the same are not redeemed according to law."

From this decree Gorham appealed to the Appellate Court for the First District, and that court, on hearing, affirmed the decree. (*Gorham* v. *Farson et al.* 18 Bradw. 520.) This appeal is from that judgment of affirmance.

Messrs. ABBOTT & JOHNSON, Mr. E. A. CRANE, and Mr. T. M. COOLEY, for the plaintiff in error:

The lien of a judgment, in a court of record, attaches to all legal and equitable rights. It attaches to the interest of a purchaser of land, as soon as the contract is made, whether it is recorded or not. *Rogers* v. *Brent*, 5 Gilm. 573; *Tinney* v. *Walston*, 41 Ill. 215; *Niantic Bank* v. *Dennis*, 37 id. 381; *Ryhiner* v. *Frank*, 105 id. 327; *Walsh* v. *Richards*, 41 Mich. 593; *Lippincott* v. *Wilson*, 40 Iowa, 426; *Lathrop* v. *Brown*, 23 id. 49; *Blaney* v. *Hard*, 14 id. 403; *Dennegree* v. *Hahn*, 13 id. 240; Freeman on Judgments, sec. 356.

If Preston, Kean & Co. were the owners of the notes, instead of Hayes, the bill should have been prepared on that theory, and could not even be brought in Hayes' name, for their benefit. *Irish* v. *Sharp*, 89 Ill. 262.

It was error to give costs, or to add interest, after the date Gorham offered to pay. The offer to pay the attorney was the same as offering it to the principal. Hurd's Stat. chap. 135, secs. 3, 4, 5; *Ferguson* v. *Papp*, 42 Mich. 115; *Sayer* v. *Tupper*, 35 id. 134.

The amount of the decree was improperly computed, and is excessive. The decree is erroneous in giving only thirty days for redemption. The statute gives one year; and, besides, it

is error, in selling one piece of land, to pay the lien on another which is in no way connected with it. *Markoe* v. *Andras*, 67 Ill. 37.

The two liens being separate, could, under no circumstances, be enforced as one. *Morse* v. *Byrne*, 55 Mich. 595.

The record shows, and the decree recites, that Gorham, by virtue of his sale under the execution against Colby, has become the absolute owner of the equity of redemption, and has his sheriff's deed. It also finds that his judgment was a prior lien to so much of the amount included in the trust deed as was shown not to be purchase money, (amounting, with interest, at the date of the decree, to $3971.51,) so that, in legal effect, the trust deed, to that amount, was a junior mortgage on the land in question, and subject to Gorham's judgment, and when Gorham obtained his sheriff's deed this junior mortgage became absolutely extinguished as a lien on the land, and the court had no right to decree that the land be sold to pay this amount. *Elder* v. *Derby*, 98 Ill. 232; *Hart* v. *Wingart*, 83 id. 284.

Mr. MORTON CULVER, for the defendants in error:

As to the question of Gorham's rights under his judgment, this court will find he has been in nowise deprived of any he ever had. In the case of *Maghee* v. *Robinson*, 98 Ill. 458, this court, citing with approval *Fortier* v. *Darst*, 31 Ill. 222, and *Sumner* v. *Waugh*, 56 id. 531, says: "A party taking an equitable title, to enforce which he must resort to a court of chancery, takes it subject to all infirmities existing against it, and can claim nothing under it which the former owner could not claim."

The court rightly decreed the whole amount of the trust deed as against all except Gorham, and as to Gorham gave him the benefit of the $3200.

Hayes was the owner of the notes at the time proceedings of foreclosure were begun, and by filing his bill declared all

notes due for failure in payment of the first note and the interest on the other notes, as he had a right to do.   *Terry* v. *Eureka College,* 70 Ill. 236; *Trust Co.* v. *Munson,* 60 id. 371; *Chapin* v. *Billings,* 91 id. 539; *Hoodless* v. *Reid,* 112 id. 105.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

By the terms of the written agreement entered into on the 1st day of May, A. D. 1881, between Preston, Kean & Co., on the one hand, and Gilbert A. Colby, on the other, there was no connection between the leasing and the sale of the property in controversy, further than when the terms in regard to the sale were complied with, the lease would expire. There was no stipulation, expressly, or in effect, that a failure to pay rent according to the terms in regard to the renting should bar or impair the right of Colby to purchase, or that any arrears for rent should be a charge upon the land as for so much purchase money.   On the contrary, the sale was to be effected simply by paying and giving notes for the stipulated sums, as agreed upon as the price, within the time specified. Nor was the agreement that the sale should be at the end of three years, from the 1st day of May, A. D. 1881.   The language is:   "Colby further agrees, within three years from the date hereof, to purchase the above described premises, and Payne" (who acted in behalf of Preston, Kean & Co.,) "to convey, or to cause to be conveyed, to Colby, at the sum of $15,000, to be paid as follows, to-wit: $5000 cash, and $5000 in one year and $5000 in two years from the date of said cash payment, with interest on said deferred payments at the rate of six per cent per annum, payable annually, and said deferred payments to be secured by a mortgage or trust deed on said premises.   *   *   *   Colby also agrees to buy, and Payne" (who acted in behalf of Preston, Kean & Co.,) "to convey, or cause to be conveyed, to Colby, lots 6, 7 and 8, of block 4, of Day's subdivision,   *   *   *   for the sum of

$1300, and interest thereon, at the rate of six per cent per annum, from date, and to pay the same, principal and interest, within one year from date."

Gorham's judgment became a lien on Colby's interest in these lots. (*Breed* v. *Gorham*, 108 Ill. 81). The judgment having been obtained, and an execution having been issued thereon, within a year after its date, before the agreement was entered into, the lien attached the moment that Colby obtained his interest,—*i. e.*, the moment that the agreement was made; and when that lien was enforced by levy and sale, and the execution of a deed pursuant thereto, by the sheriff, (there having been no redemption,) Gorham's title related back to the commencement of the lien, and embraced the interest that Colby then had in the property. *Elder* v. *Derby*, 98 Ill. 232; *Hart et al.* v. *Wingart*, 83 id. 284.

Since, as to the eight lots, comprising block 4, of Hubbard, Crocker & Stone's addition, the agreement was, that Colby was to buy, and Preston, Kean & Co. were to convey, *within*, and not at, the *termination* of three years, it must follow, that it was competent for Colby to make the payment, and the promissory notes, and deed of trust securing them, for the deferred payments, and Preston, Kean & Co. to make the conveyance on the 1st day of October, A. D. 1881; and since it was competent for Colby, in order to protect his title, or Gorham, in order to protect his lien, to pay off one or all of the promissory notes at any time after their execution, it is impossible that the substitution of promissory notes, running for the times those run which were executed on the 1st day of October, A. D. 1881, for the cash payment, and for promissory notes for the deferred payments, running for the times those were to run, as provided by the agreement of May 1, A. D. 1881, can have denied or impaired any rights which Gorham had by virtue of his lien. But the lots were, by the contract of May 1, to be charged only with the payment of the purchase money,—those in each block for their own cost, respectively;

and the deferred payments were to bear only six per cent interest. To add, therefore, to the burden of these lots, $3000, for money borrowed by the firm of Colby, Gardner & Co., and $200 for back rent due from Colby, and to require the payment of seven per cent interest, instead of six per cent, upon the deferred payments, was, to that extent, to impair and destroy Gorham's lien, and was inadmissible; and the circuit court, therefore, properly held, that while the execution of the deed on the 1st day of October, A. D. 1881, by Preston, Kean & Co., to Colby, and the taking back by them, from him, of a mortgage, at the same time, did not enlarge the rights of Colby in the lots, beyond what they were under the contract of May 1, A. D. 1881, it was not admissible, since Gorham's lien had attached before that time, to destroy or sensibly impair Colby's interest in the lots as it was fixed by the agreement of May 1, A. D. 1881.

But the mortgage or deed of trust executed on the 1st of October, A. D. 1881, contains this clause, among others: "That in case of default in the payment of the said notes, or any or either of them, or any part thereof, or in case of the breach of any of the covenants or agreements therein mentioned, it shall then be lawful for the said party of the second part," (*i. e.*, John Farson) "or his successors in trust, on application of the legal holders of said notes, or either of them, to enter into and upon, and take possession of, the premises thereby granted, or any part thereof; and to collect and to receive all rents, issues and profits thereof, and in his own name, or otherwise, to file a bill in any court," etc. And the bill here alleges, that Frederick W. Hayes is the owner and holder of the notes secured by the deed of trust; "that none of said notes, or any part thereof, nor any interest, has been paid by said Colby, and that the said Frederick W. Hayes, who is now the holder and owner of all of said notes, has, by virtue of the terms of said trust deed, declared all of said notes, and the interest thereon, due and payable, and has

requested your orator" (John Farson,) "to foreclose said mortgage." These allegations are all disproved. The complainant, John Farson, testified, that he never had any conversation with Frederick W. Hayes about this trust deed, nor about the notes that it was given to secure. He repeated this more than once, and he also testified that he had no recollection of ever having seen the trust deed before it was presented to him upon his examination as a witness. Samuel Kean, a member of the firm of Preston, Kean & Co., testified, in substance, that the property of the notes never went out of Preston, Kean & Co.; that the notes were simply transferred to Hayes in trust, in fact, for a purpose that was never consummated,—the real ownership, all the time, remaining in Preston, Kean & Co.,—and they were, before the hearing, re-transferred to Preston, Kean & Co.

The decree, without any amendment having been made to the bill, or any cross-bill having been filed, found that Preston, Kean & Co. were the owners of the notes, and decreed payment to them. There was clearly such a variance between the allegations and proofs, and the allegations and the decree, as renders it erroneous. *Parkhurst* v. *Race et al.* 100 Ill. 558; *Hall* v. *Towne*, 45 id. 493; *Randolph* v. *Onstott*, 58 id. 52. The bill should either have been amended after it was ascertained that Preston, Kean & Co. were the owners of the notes, and the parties at whose instance the immatured indebtedness was declared due, or a cross-bill should have been filed setting up such facts. *Jenkins* v. *International Bank et al.* 111 Ill. 470; *White et al.* v. *White, Jr.* 103 id. 438; *Purdy et ux.* v *Henslee et al.* 97 id. 389.

But we are of opinion that it was not competent for Preston, Kean & Co. to declare the last note due, and have a bill for foreclosure filed on the 3d day of May, A. D. 1884, when this bill was filed. The evidence is uncontradicted, that in February, A. D. 1884, the attorney and agent of Gorham applied to Preston, Kean & Co., on behalf of Gorham, to ascertain what

amount, included in the notes secured by the deed of trust, was due from Colby to them on the original purchase of the lots, and which Gorham was, therefore, bound to pay. They refused to converse with him upon the subject, but referred him to their attorney, Mr. Culver. Mr. Culver informed him that the amount was $19,500, and $3125 interest thereon, and soon afterwards, Mr. Culver, in another conversation with the attorney and agent of Gorham, in regard to the amount that Gorham should pay to Preston, Kean & Co. on account of Colby's original purchase of the lots, repeated the demand that he should pay $19,500 principal, and $3125 interest thereon, and informed him that Preston, Kean & Co. would not accept any less sum. At no subsequent time, before filing the bill, did they indicate that they would accept any less sum than that thus demanded by their designated agent—for the purpose of declaring the amount of their demand—Mr. Culver; and that demand is repeated in this bill. It has been seen that that amount included $3200, and one per cent per annum of interest on the amount actually due, besides seven per cent per annum interest on the $3200, which Colby was not obligated to pay by the terms of the agreement between him and Preston, Kean & Co., of May 1, 1881, and which, therefore, was not chargeable against Gorham. Where a creditor, in advance of an offer to pay, or in response to such offer, informs the party under obligation to pay, that he will not accept the amount actually due, in discharge of the indebtedness, the party under obligation to pay is relieved of the duty of tendering the amount actually due. *Wight* v. *Gardner*, 66 Ill. 95; *McPherson* v. *Walker*, 40 id. 371; *Dwen* v. *Blake*, 44 id. 136.

Gorham, then, not having been in the wrong in not having paid or tendered the amount actually due, it was inequitable to declare a forfeiture and file a bill before the last note was due.

Since the decree below must be reversed for these reasons, it is only necessary to speak of the form of the decree, to avoid repeating, in the future, what we deem to be erroneous therein.

By the terms of the contract of May 1, A. D. 1881, the indebtedness incurred in the purchase of the eight lots constituting block 4, was to be charged against those lots, and the indebtedness incurred in the purchase of the three lots was to be a charge against those lots. It would, therefore, manifestly violate the rights of Gorham, under that contract, to charge, in any contingency affecting his right to redeem, the indebtedness incurred in the purchase of the first mentioned lots, against the second mentioned lots, or the reverse. So, also, when Gorham's title became perfected, no equity of redemption remained in Colby. He, thereafter, did not have, in any event, any further interest in the property. Preston, Kean & Co.'s right of foreclosure was, therefore, then limited to the amount fixed as the purchase price by the contract of May 1, 1881, and interest thereon at six per cent per annum. The evidence sufficiently proves that the value of the property is greater than the amount that Gorham is required to pay under that contract, and so there can be no strict foreclosure, under our practice. Gorham is therefore entitled to redeem by paying the amount chargeable against him, with current interest, at any time within twelve months from the day of sale. No one else having a right to redeem from the sale, the decree should not direct the sale to be for an amount, chargeable against Colby or some one else than Gorham, greater than that which Gorham is required to pay. Gorham having a right to redeem by paying a certain amount, his property can not be subjected to sale for a greater amount. There may, undoubtedly, in foreclosing mortgages, often, in the same case, be separate decrees on account of the distinct indebtedness of different parties; but the distinct indebtedness of different parties can not all be charged against the

mortgaged property, unless they are all liens upon the property, under the mortgage, prior to the title of the owner of the equity of redemption.

The evidence showed some outstanding title or claim in Preston, Kean & Co. on account of taxes. It is not claimed that they have acquired a title, adverse to Gorham, in that way, and it is clear they could not. The amount, however, may be important in taking an account between the parties. The evidence shows that Colby, in October, A. D. 1881, turned over the possession of these lots to Preston, Kean & Co., informing them that he should have nothing more to do with them. They accepted this possession, and thereafter necessarily occupied the relation, to Colby, of mortgagees in possession, and, as such, it was their first duty to pay, from rents, or profits derived otherwise from the use of the property, all claims for taxes. It is claimed, and evidence is given tending to support the claim, that this relation was subsequently destroyed by a decree of court, on bill filed by Gardner, who had been a partner of Colby, against the two, Colby and Preston, Kean & Co., to dissolve partnership, ordering these lots to be placed in the possession of a receiver, and subsequently to be sold, as well as certain personal property, by the receiver, for the payment of the $3000 borrowed by Colby, Gardner & Co. from Preston, Kean & Co., and included in the deed of trust, as has been before seen. These lots were not the property of Colby, Gardner & Co., but the individual property of Gilbert A. Colby. Under no principle had a court of equity, at the instance and on behalf of the members of that firm, any right to interfere with the individual property of members of the firm, which had been, in good faith, previously devoted to the payment of the debts of the individual; and we are unable to comprehend how, if the facts had been presented to the court by Preston, Kean & Co., their possession could have been disturbed. The proof in this record is not satisfactory, because not full in this respect. Gorham was not made a party to

the suit, and Gilbert A. Colby was not personally served with process, as we understand the record, but Preston, Kean & Co. were made defendants, and were personally before the court. If Preston, Kean & Co. failed, in that suit, to assert their rights to the possession, as seems apparent from the evidence before us, they can not, as against the failure to perform their duty in relieving the property from any claim on account of taxes, allege this deprivation of possession of the property.

The judgment of the Appellate Court affirming the decree of the circuit court, as also that decree, is reversed.

*Judgment reversed.*

Mr. JUSTICE MAGRUDER did not take part in the decision of this case.