## PRITCHETT ET UX v. SHERIDAN.

### [No. 4,179.   Filed May 2, 1902.]

TRIAL.—*Action on Note.—Defense of Gaming.—Burden of Proof.*—Where, in an action on a promissory note, defendant answered that a part of the consideration of the note was a gambling debt, the burden was on defendant to establish such fact. *p. 84.*

EVIDENCE.—*Self-Disserving Statements.—Gaming.*—Where, in an action on a note defendant set up the defense that a part of the consideration of the note was a gambling debt, evidence as to statements made by defendant that he signed the note, and that it was all right, and that he silently acquiesced in statements made in his presence that he owed the amount of the note, was not in the nature of impeaching testimony, for which a foundation must be laid, but was properly regarded as more truly representing the actual facts in the case than his later testimony to the contrary. *pp. 84, 85.*

From Fountain Circuit Court; *J. M. Rabb*, Judge.

Action by Ellen Sheridan against James A. Pritchett and wife on a promissory note, and to foreclose a mortgage. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*C. R. Milford* and *L. Nebeker*, for appellants.
*E. Stansbury*, for appellee.

BLACK, J.—The appellee, Ellen Sheridan, sued upon a promissory note for $2,537.86 given her by the appellant, James A. Pritchett, while unmarried, and to foreclose a mortgage on land executed by him to her at the same time to secure the payment of the note. He having thereafter married, his wife was made a defendant, and with him she appeals. There was an answer in denial, with other paragraphs of answer, in which it was pleaded, in various forms, as a defense, and also as a partial defense, that the note and mortgage, as to $1,000 of the amount thereof, were given in consideration only of money won from the appellant James A. Pritchett on the result of a wager. The

reply was a general denial.  Under an assignment that the court erred in overruling the motion of the appellants for a new trial, the parties have discussed the evidence.

The evidence showed, without conflict, that the appellant James A. Pritchett had executed his note, governed by the law merchant, for $1,000, to one Edwin D. Ward, which he transferred and indorsed, for a valuable consideration before its maturity, to John Sheridan, son of the appellee. This note, the appellants alleged in certain paragraphs of their answer, was given to Ward for money won by him of the appellant James on the result of a wager.  The only evidence that this was the consideration of the note was furnished by the testimony of the appellant James alone, who testified that it was given in payment of lost wagers on the game of "craps" played by him with Ward.  The evidence, uncontradicted, showed that John Sheridan gave in exchange to Ward for this note, a saloon, a note of a third person, and a note of John Sheridan, the transaction being closed and the Ward note being received by John Sheridan about seven o'clock in the evening.  There was evidence that the next morning, about eight or nine o'clock, the maker of the note was met by John Sheridan, who said to the former, "Is this note all right?"  To this Pritchett answered, "Yes, that's all right."  Sheridan said, "It's your note, is it?"  Pritchett answered, "Yes."  Sheridan said, "You signed it, did you?"  Pritchett answered, "Yes."  Sheridan said, "It's all right, is it?"  Pritchett answered, "Yes, it's all right."  John Sheridan, pursuing the conversation, referred to the fact that the note was not nearly due, and told Pritchett he would like to have some security.  Pritchett proposed to procure a loan from the appellee, and, as a result of the conversation, the two men went to the appellee.  Pritchett was already indebted to the appellee upon a note and mortgage for $5,000, on which the interest was in arrears, and she had been seeking in vain to collect the interest from him.  When he and John

Sheridan came into the presence of the appellee, John told her that Pritchett proposed to settle his interest account. The manner in which he proposed to do so was explained to her by the two men, the subject being introduced by John, who then informed his mother that Pritchett owed him $1,000 for which he had traded the saloon. Pritchett expressed his wish to borrow enough money to pay two debts which he owed at bank,—one secured by a mortgage on the land here involved,—and also to pay off the note in question, in the hands of John Sheridan, but the appellee said she did not have so much money in her possession. It was arranged that she would pay a portion of the indebtedness of Pritchett to the bank, and give her note for the residue, and that when she should obtain the necessary mon y she would pay John Sheridan, for Pritchett, the amount of the note in question, and that, for the aggregate of these amounts, and the interest due her, Pritchett should make his note and execute his mortgage to her. Pritchett requested that the loan should be made to him for ten years, but the appellee declined to make it for so long a period, and the note and mortgage were accordingly made for five years; being the note and mortgage here in suit.

The parties, in effecting the arrangement agreed upon, visited the office of an attorney, who testified on the trial that Pritchett, in the presence of the appellee and John Sheridan, said he was going to borrow money from the appellee, and produced a memorandum, and said, amongst other things, that he owed John Sheridan $1,000, and that there was a little interest on that,—a few dollars. The appellee fully performed all the obligations thus devolved upon her. She paid off in money, and settled with her own note, the debts of Pritchett to the bank, and he received at the time the evidences of his indebtedness to the bank. He also received the $1,000 note from John Sheridan, who delivered it to the attorney, who passed it over to Pritchett; it never having been in the possession of the appellee. And

she afterward paid John Sheridan $1,008 in satisfaction of her oral agreement to do so, which formed part of the consideration for the note and mortgage in suit. When she did so, she had no information whatever that the Ward note was given, or was reputed to have been given, for a gambling debt.

Counsel for the appellants in argument insist that the note and mortgage in suit were, in legal effect, as to $1,000 of the principal debt represented thereby, but the renewal of the note for that sum given in satisfaction of a lost wager, and that to such amount the consideration was illegal. We do not find it necessary to decide the question thus pressed by the appellants. If the fact pleaded in answer, that the Ward note was given for money won by Ward in playing a game of craps, would constitute a defense, either complete or partial, the burden of establishing such fact was on the appellants. Whatever might be the proper effect of the testimony of the appellant James to that effect, if believed, it was wholly uncorroborated; and, as it appears in the record before us it bears some discrediting indications, which, with others not apparent here, the trial court may have taken into consideration in connection with the other evidence. It is to be observed that the maker of the Ward note directly and distinctly admitted to John Sheridan that the note was signed by appellant James, and that it was all right. He also expressly and directly admitted to the attorney, in the presence of John Sheridan and his mother, the appellee, that he owed John Sheridan $1,000, represented by this note. He also admitted the validity of the note, in part by his silent acquiescence with what was said in his presence by John Sheridan to the appellee, when it was his duty to speak, and to contradict, if what John said to the appellee was not correct, and also, at the same time, by asking of her a loan of money with which to pay it off, and by obtaining her promise to pay John Sheridan, for which he gave her the note and mortgage in suit. Such admissions constituted

evidence not merely of the making of the admissions themselves, but also of the facts admitted; that is, that the note represented a valid indebtedness. Such self-disserving statements and conduct of a party to the action, when it was incumbent upon him to speak, and to tell the truth, were not in the nature of impeaching evidence, for which a foundation must be laid, but may properly have been regarded by the trial judge as more truly representing the actual facts in the case than his later testimony to the contrary. *Boston, etc., R. Corp.* v. *Dana,* 1 Gray (Mass.) 83; *Brown* v. *Calumet River R. Co.,* 125 Ill. 600, 18 N. E. 283; *Wisconsin Planing Mill Co.* v. *Schuda,* 72 Wis. 277, 39 N. W. 558; 1 Am. & Eng. Ency. of Law (2d ed.), 723 *Pierce* v. *Goldsberry,* 35 Ind. 317; *Broyles* v. *State, ex rel.,* 47 Ind. 251; *Grand Rapids, etc., R. Co.* v. *Diller,* 110 Ind. 223; *Tobin* v. *Young,* 124 Ind. 507; *Doan* v. *Dow,* 8 Ind. App. 324.

Judgment affirmed, with five per cent. damages.