## BEATTY v. MILLER ET AL.

[No. 7,218. Filed April 26, 1911.]

1. REPLEVIN.—*Possession.*—*Right of.*—The right of possession is the gist of an action in replevin. p. 496.
2. CONTRACTS.—*Intention.*—*Custom.*—*Sales.*—In agreements for the sale of property the intention of the parties is the principal question, and that is determined from all of the circumstances including any local customs or usages bearing on such question. p. 496.
3. CONTRACTS.—*Sales.*—*Intention.*—*Question for Jury.*—The intention of the parties to a sale of personal property is a question for the jury or court trying the case. p. 496.
4. APPEAL.—*Weighing Evidence.*—The Appellate Court will not weigh conflicting evidence. p. 496.
5. SALES.—*Transfer of Title.*—*Question for Jury.*—Where plaintiff agreed to sell to defendant certain hogs, receiving thereon $100 as part payment, afterwards delivering the hogs and agreeing upon certain terms in settlement, the defendants later offering to settle on such terms, at which time the plaintiff refused either to accept, or to return the $100, the jury is warranted in finding that the title passed to defendant. pp. 497, 498, 499.

6. CONTRACTS.—*Executory.*—*Sales.*—An agreement to sell and deliver certain hogs at an agreed price constitutes an executory contract of sale. p. 498.

7. CONTRACTS.—*Lex Loci Contractus.*—*Sales.*—A contract of sale made in a sister state is governed by the laws of such state. p. 498.

8. CONTRACTS.—*Nonperformance.*—*Justification.*—Conduct by one party to a contract which prevents the performance thereof by the other justifies the nonperformance thereof by the latter. p. 499.

9. TENDER.—*Checks.*—*Waiver.*—*Jury.*—A tender by check, where the amount thereof only is objected to, is sufficient; and the evidence of a waiver of tender is for the court, or jury trying the case. p. 499.

10. DAMAGES.—*Replevin.*—*Expenses.*—Where a defendant's animals were delayed in shipment because of a replevin action, the plaintiff is liable for the expenses incident to the delay and also for the loss due to a fall in the market during such time. p. 500.

From Superior Court of Marion County (75,904); *John L. McMaster,* Judge.

Action by William A. Beatty against Samuel M. Miller and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*Charles A. Dryer,* for appellant.
*Elmer E. Stevenson,* for appellees.

IBACH, J.—Action in replevin was brought by appellant against appellees for the possession of 116 hogs, of which he avers he is the owner.

Judgment was rendered that appellee Miller was the owner, by purchase from appellant, of said hogs, that he was entitled to the return thereof, and that he should recover on his counterclaim for damages the sum of $84.82, the expense occasioned to him by delay of the sale of the hogs because of the replevin action. The judgment further provided that it should be without prejudice to any right which appellant might have to recover from Miller the purchase price of the hogs.

Error is assigned in overruling appellant's motion for a new trial, for the reasons that the damages assessed by the

court are excessive, that the decision of the court is not
sustained by sufficient evidence, and that the decision of the
court is contrary to law.

The main question for consideration presented by this
appeal is whether there was a sale of the hogs in question
by Beatty to Miller before the beginning of the ac-
1.  tion, thereby giving Miller the right of possession of
such personal property, for the question of possession
enters into and becomes the very gist of the action of re-
plevin.

In agreements for the sale of personal property, the prin-
cipal question is the intention of the parties, which is to be
ascertained from a correct determination of the con-
2.  tract, taken in connection with all the circumstances
of the transaction. *Levasseur* v. *Cary* (1886), 1 New
Eng. Rep. (Me.) 893; 24 Am. and Eng. Ency. Law (2d ed.)
1023.

It has also been held that business usages prevalent at
the time and place of the contract may bear on the question
of intention. *J. B. Lyon & Co.* v. *Culbertson, Blair & Co.*
(1876), 83 Ill. 33, 25 Am. Rep. 349; *Oldershaw* v. *Knoles*
(1879), 4 Ill. App. 63; *Morningstar* v. *Cunningham* (1887),
110 Ind. 328, 59 Am. Rep. 211.

In every case, therefore, where the question of the sale
of personal property is involved, it is for the jury,
3.  or the trial court if the trial is without a jury, to
ascertain the true intentions of the parties to the
contract of sale, and each case must stand upon its own
peculiar evidence.

It is also well established that appellate courts will not
weigh evidence. In cases like this, where the evidence is
conflicting, this court must limit its review of the
4.  case to considering whether there was evidence pre-
sented to the trial court which will support its find-
ing and judgment. The trial court is the sole judge of the
weight of evidence, and may, for good reasons apparent to it,

but which this court cannot know from the record, give to part of the evidence little weight, or no weight at all.

The uncontradicted evidence in this case, however, shows the following facts: On March 28, 1908, Charles Miller, the son and agent of appellee, made a contract with appellant, by which the latter was to sell to appellee 120 hogs, at five and one-half cents a pound, to be delivered on April 15, 1908, at Raymond, Illinois. Charles Miller paid appellant $100 on the transaction, by a check of his father's, signed by himself as agent, which appellant later cashed. Subsequently, appellant met the Millers in Raymond, and arrangements were made for him to deliver the hogs on April 11. On that date appellant and his son drove the hogs to Raymond, to the stock-pens, where they were to be weighed and the amount to be paid to appellant ascertained. Charles Miller met them, and assisted in bringing the hogs into town, and appellee Miller, his father, was at the pens when the hogs were brought there. He objected to receiving four small pigs, and, with appellant's consent, these were separated from the others. Appellee Miller then weighed the remaining hogs, appellant standing near. They were driven into a pen and fastened up by Miller, and then a controversy arose as to the docking of certain hogs, according to the custom of stock buyers of the neighborhood. Appellant agreed to a dock of 160 pounds for three certain hogs, shown to be somewhat less salable than the rest of the number. Appellee Miller claimed that several others should be docked, and insisted on a dockage of 400 pounds. Appellant refused to agree to this.

From this point the evidence is conflicting. That given by appellee and his witnesses, largely contradicted by appellant and his witnesses, is to the following effect: Appellee Miller told appellant that if he would return his $100 he might have the hogs, for the sake of peace; that appellant refused to do so; that appellee then offered to settle

with appellant on his own terms of 160 pounds dockage, but did not at the time write out a check, because appellant refused to accept payment; that later in the same afternoon he made out a check, and by his son offered it to appellant, who still refused it, and again refused it on the next day. This check was drawn for the amount the hogs weighed, less 160 pounds, at the agreed price, and appellant did not object to accepting it because it was a check, but because, notwithstanding his agreement to dock 160 pounds, and to except the four pigs from the contract, he claimed the amount insufficient. One witness testified that appellant at this time said that he would not accept any amount from appellee.

Later developments have little bearing on the question of the transfer of title. That the contract made on March 28 was an executory contract, and not a completed sale,

6. is apparent from all the evidence in the case. There is evidence in the record tending to show that on April 11 the sale became an executed or completed one. It appears, however, that appellant, on April 12 attempted to ship the hogs, and was prevented by the Millers, who themselves shipped those in suit to Indianapolis to Tolin, Mattern & Co. Appellant came to Indianapolis and began the present replevin action. Appellee Miller retained possession of the hogs by executing a redelivery bond, and then completed their sale to appellees Tolin, Mattern & Co.

Both appellant and appellees are residents of Illinois, the contract of sale was made in that state, and is

7. governed by the law of Illinois. *Garrigue* v. *Kellar* (1905), 164 Ind. 676, 69 L. R. A. 870, 108 Am. St. 324. We shall therefore cite Illinois cases to support our conclusion.

Appellant insists that title to the hogs did not pass to appellee Miller, and that there was a mutual rescission of the executory contract of sale. While there is evi-

5. dence upon which the court might have so found, the evidence tends to sustain the finding that title did

pass, and to prove that appellant had put the hogs out of his power into that of appellee Miller, that they had been weighed for the purpose of ascertaining the price, and that said appellee offered to appellant the amount which he had agreed to accept, but was prevented from giving it to him by appellant's conduct. It is a well-established principle of law that the actions and conduct of one party to a contract, which prevent the other from performing his part, excuse nonperformance. *Gorham* v. *Farson* (1887), 119 Ill. 425, 10 N. E. 1; 2 Mechem, Sales §§1106, 1107.

Appellee Miller seems in this view of the case to have honestly done all in his power to pay the purchase price to appellant, and even to have made concessions to said appellant in order to carry out his part of the contract, instead of having rescinded it. In the light of these facts, we cannot say that the trial court was not justified in finding that title to the hogs had passed to Miller, and that the relation between him and Beatty became that of debtor and creditor.

Appellant urges that the check offered by Miller to him was not a sufficient tender of the purchase price. Money alone has been made a legal tender by law, and yet where a check is offered by the debtor, and is objected to by the creditor, because it is not for the correct amount, it is a waiver of the objection that the tender was not made in cash, if no objection is made to it because it is a check. 28 Am. and Eng. Ency. Law (2d ed.) 26; *Gradle* v. *Warner* (1892), 140 Ill. 123, 29 N. E. 1118. Whether the production of money was waived by appellant is a fact for the trial court to find, and when it conclusively appears that a tender would have been unavailing, it need not be shown. *Gorham* v. *Farson, supra; McManus* v. *Gregory* (1885), 16 Mo. App. 375; Benjamin, Sales (5th ed.) 771. In the present case, the refusal of an offered

check, under the circumstances testified to by appellee Miller, was a waiver of further tender.

There is evidence in the record clearly sustaining the award of damages to Miller on his counterclaim. The hogs were held in the stockyards at heavy expense for two days, on account of the suit brought by appellant, and the price of hogs fell during that time forty cents on the hundred pounds.

No reversible error appearing in the record, the judgment is affirmed.