## MILLER *v.* FARMERS STATE BANK.

[No. 7,715. Filed December 20, 1912.]

1. PRINCIPAL AND AGENT.—*Execution of Notes.*—*Authority of Agent.*—*Determination.*—In an action against defendant as surety on a promissory note, where it was claimed by plaintiff that defendant's name was signed by defendant's son, pursuant to a general authority, the question of such general authority was a question of fact to be determined from a preponderance of all the evidence. p. 7.

2. APPEAL. — *Review.* — *Findings.* — *Presumptions.* — *Evidence.*— On appeal all presumptions will be indulged in favor of the finding of the trial court, and if there is any evidence in the record to support the judgment, the same must be upheld. p. 7.

3. PRINCIPAL AND AGENT. — *Execution of Notes.* — *Authority of Agent.*—*Evidence.*—*Sufficiency.*—In an action on a note, on the

theory that defendant's name was signed as surety by his son pursuant to a general authority, evidence that defendant and his son transacted business in partnership for many years, that they owned a farm as tenants in common which the son later occupied in the business of buying and selling live stock and in which business he often had use for large sums of money, that the son was a man of standing in the community, that the personal relation of defendant with his son was most cordial, together with positive testimony that eight or nine years before the execution of the note sued on, defendant had given his son authority to use his name as surety on notes, and that notes thus signed by the son at different times thereafter, were, after the son's death, recognized by defendant as binding obligations on himself, was sufficient to show a general authority in the son to sign defendant's name so as to render him liable as surety on the note sued on, notwithstanding defendant's denial of having given authority to sign that particular note. p. 8.

4.　EVIDENCE.—*Self-disserving Statements of Party.—Nature.*—Self-disserving statements by defendant admitting his liability on notes to which his name was signed by his son, and his son's authority to thus sign his name, made by defendant when it was incumbent on him to speak the truth, are not in the nature of impeaching evidence, for which a foundation must be laid, but, in addition to being evidence that the admissions were made, constitute evidence of the facts admitted. p. 10.

5.　PRINCIPAL AND AGENT.—*Declarations of Agent.—Res Gestae.*—In an action against defendant on a note to which his name had been signed by his son, since deceased, evidence of declarations made by the son at the time of the execution of the note, but in defendant's absence, relative to his authority to sign his father's name, was admissible as part of the *res gestae,* when properly limited in its effect so as not to bind defendant on the question of such authority. p. 10.

6.　BILLS AND NOTES.—*Note Executed by Agent.—Evidence.*—In an action on a promissory note to which defendant's name had been signed by his son, where there was evidence that defendant had given his son general authority to use his name on notes, the introduction of the note in evidence was not erroneous. p. 11.

From Boone Circuit Court; *James B. Kent,* Special Judge.

Action by the Farmers State Bank against Matthew G. Miller. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*B. F. Ratcliff* and *Higgins & Rogers,* for appellant.
*Terhune & Adney,* for appellee.

ADAMS, J.—Suit by appellee against appellant alone on a promissory note for $1,300, payable to appellee, bearing the names of Joseph S. Miller and appellant, Matthew G. Miller. Issue of fact was formed on the complaint by plea of *non est factum.* Trial by the court, finding and judgment for appellee.

The error assigned and relied on for reversal is that the court erred in overruling appellant's motion for a new trial. The question presented for determination by the record and briefs relates to the execution of the note. It is not contended by appellee that appellant actually signed his name to the note in suit, or specifically authorized the signing of the same. It is, however, insisted by appellee that, prior to the date of the note, appellant had given to his son, Joseph S. Miller, general authority to sign his (appellant's) name to notes as surety for said son, and that appellant's name to the note in suit was signed by Joseph S. Miller, pursuant to such general authority. If Joseph S. Miller, at the time he executed the note sued on, had general authority to sign his father's name as surety on his paper, then the

1. judgment is clearly right. Whether the son had such general authority was a question of fact for the trial court, to be determined, like any other fact in the case, from a preponderance of all the evidence. On appeal, all presumptions will be indulged in favor of the finding of

2. the trial court. In examining the evidence, we are limited to such evidence as supports or tends to support the judgment; and if there is any evidence in the record supporting the judgment, the same must be upheld. *Stockwell* v. *Whitehead* (1911), 47 Ind. App. 423, 432, 94 N. E. 736; *Beatty* v. *Miller* (1911), 47 Ind. App. 494, 496, 94 N. E. 897; *Indiana Union Traction Co.* v. *Keiter* (1911), 175 Ind. 268, 274, 92 N. E. 982.

It is shown by the testimony that Joseph S. Miller was the only living son of appellant, and for many years, after reaching manhood, both before and after his marriage, he lived with his father, and they were partners in farming, and in buying and selling live stock; that they bought a farm in the neighborhood, and held the same as tenants in common; that subsequently Joseph moved on this farm, at which time he and his father divided their business, Joseph continuing to buy and sell live stock. In the carrying on of this business, from time to time he had use for large sums of money. It is also shown by clear inference that Joseph S. Miller was a man of standing in the community. He was twice the president of the county agricultural society, and at the time of his death was its vice-president. He had been sheriff of Boone county, and was a member of the county council when he died. He is shown to have had his father's entire confidence, and their personal relations were most cordial.

Joseph S. Miller died April 1, 1909, and soon thereafter it developed that many notes were outstanding, which Joseph had given and to which he had signed his father's name as surety. Within a few days after the death of his son, appellant, by agreement, permitted judgment to be taken against him on several of these notes, some of which were not due. To other holders of notes, signed by his son in the same manner, appellant recognized his obligations, and declared his intention to pay, but when it was disclosed that notes aggregating approximately $30,000 were outstanding, appellant "agreed" not to pay. To Samuel W. Ailes, who went to see appellant two days after the funeral of Joseph S. Miller, for the purpose of securing appellant's signature to a note as promised by his son, appellant said: "If Joe had signed my name, it would have been all right. You will remember he used it at the Bank of Advance. Milton Smith came to see me with a note. Milt had a note for a thousand

dollars, and I told him it was all right. I told him I gave Joe the privilege to use my name."

Again, in the examination of the witness, Ailes, the record shows the following question and answer: "Q. I will ask you in that conversation you had with Mr. Miller, what, if anything, Mr. Miller said as to his intention to pay these debts, or what did he say on the subject? A. I think it was when he referred to Smith coming out to see him about his note, and he said 'I thought when Smith was here—I thought after that I would see Joe, and see something about his business'; and he said 'I just neglected it, and did not do it, and I did not know how much he was in debt'. 'But', he said 'I am going to pay it, it haint right that anybody else should pay it, and I am going to see that everybody is paid.' "

From the evidence of Hiram P. Stephens, the holder of a note executed in the same manner, the record shows the following questions and answers: "Q. What, if anything, did he say about his intention to pay these claims? A. He said 'I had intended to pay these claims, but agreed not to pay them, and I will have to turn you down with the rest.' Q. What, if anything, in that conversation, did he say about his intention to pay this note? A. He said he intended to pay all of them; he said it would break him up, but if he paid the creditors they would get it, and if it went the other way the lawyers would get it, and he would have to be buried in poverty and disgrace. Q. In that conversation, did he say anything about having given Joseph authority to use his name as security? A. Yes, sir. Q. Did he or did he not say he had given Joseph authority to use his name as security? A. Yes, sir, he said about eight or nine years ago."

At the trial appellant testified in his own behalf. He denied that he had signed the note in suit, or had directed his son to sign it for him. An examination of appellant's evi-

dence, however, fails to disclose that he denied giving his son general authority to use his name on notes for borrowed money. It does not appear that he was asked the question. As the theory of general authority was the one on which appellee predicated its right to recover, the failure of appellant to make any declaration on the subject is at least significant. There was positive testimony before the court that, eight or nine years before, appellant had given his son authority to use his name as surety on notes. Without any denial on his part, this testimony stands uncontradicted, and must be taken as an implied admission.

This court in *Pritchett* v. *Sheridan* (1902), 29 Ind. App. 81, 84, 63 N. E. 865, said: "Such admissions constituted evidence not merely of the making of the admissions themselves, but also of the facts admitted; that is, that the note represented a valid indebtedness. Such self-disserving statements and conduct of a party to the action, when it was incumbent upon him to speak, and to tell the truth, were not in the nature of impeaching evidence, for which a foundation must be laid, but may properly have been regarded by the trial judge as more truly representing the actual facts in the case than his later testimony to the contrary."

One of the grounds of the motion for a new trial was that the court erred in permitting proof to be made of certain declarations of Joseph S. Miller, in the absence of appellant, relative to his authority to sign his father's name. The ruling of the court, as shown by the record, was in these words: "The evidence is not competent and will not be considered on the question as to whether or not Joseph Miller had authority from his father, Matthew G. Miller, to sign his name to the note. It is admitted as a verbal fact, and because it may tend to throw light upon the isolated transaction sought to be proved, and to illustrate that transaction. Thus limiting the testimony, the objection will be overruled." The evidence complained of being

offered and received simply as a part of the *res gestae,* and not for the purpose of binding appellant by the declarations of his son, made in his absence, the same was competent, within the limitation fixed by the court.

Further complaint is made that the court erred in permitting the introduction of the note in evidence. This cause for a new trial embraces essentially the determination of the whole case, and what we have already said clearly presages our position on this specification. It may, however, be said, in addition, that there was some evidence before the court, at the time the note was offered, showing that appellant had given his son general authority to use his name on notes.

There was no error in overruling the motion for a new trial. The judgment is affirmed.

Note.—Reported in 100 N. E. 119. See, also, under (1) 31 Cyc. 1674; (2) 3 Cyc. 360; (3) 31 Cyc. 1667; (4) 16 Cyc. 1217; (5) 16 Cyc. 1006. As to what is admissible as part of the *res gestae,* see note to *Hinchcliffe* v. *Koontz* (Ind.), 16 Am. St. 407; 95 Am. Dec. 51. As to the admissibility in evidence of the acts and declarations of agents, see 131 Am. St. 306.