**A.L. MADDOX, Appellant**
**(Plaintiff Below),**

v.

**Thurlow WRIGHT, Marlene Wright, Fleming Realty and Robert Wesselhoft, Appellees (Defendants Below).**

**No. 3–684A155.**

Court of Appeals of Indiana,
Third District.

Feb. 24, 1986.
Rehearing Denied April 18, 1986.

Michael Langer, Langer & Langer, P.C., Valparaiso, for appellant.

Alan E. O'Connor, Hobart, for appellees.

HOFFMAN, Judge.

A.L. Maddox appeals an adverse judgment rendered upon his complaint for foreclosure, specific performance, breach of contract, and interference of contract. The issue presented to this Court for review is whether a seller may be estopped from asserting a non-assignment clause in a land contract.

On appeal from a negative judgment, this Court will neither weight the evidence nor judge the credibility of the

witnesses testifying at trial but will consider only the evidence most favorable to the prevailing party, together with all reasonable inferences which may be drawn therefrom. *Young v. Van Zandt* (1983), Ind. App., 449 N.E.2d 300.

The facts most favorable to the appellees show that Thurlow and Marlene Wright entered into a land contract with A.L. Maddox on September 3, 1974. That contract contained a provision prohibiting assignment of the contract without the consent of Maddox. In late 1980, the Wrights employed realtor, Bruce T. Fleming, to locate a buyer for the property. Upon securing a buyer, Robert Wesselhoft, Fleming requested Maddox's approval for an assignment of the contract. Maddox responded that he was ill and did not want to discuss the matter.

On January 15, 1981, Fleming contacted Maddox's collection agent, Commercial Bank of Crown Point, requesting a payoff statement on the contract and advising that Maddox had not agreed to the assignment. The bank furnished a payoff statement on January 26, 1981, but noted specifically that it was merely acting as collection agent for Maddox and was only providing the information from its records. Verification, it advised, had to be made through Maddox himself.

Fleming testified at trial that Maddox was informed a second time the Wrights wished to pay off the contract balance. Maddox again responded that he was ill and did not want to be bothered. He instructed Fleming to "just make payments to the Bank." Additionally, Fleming testified that he received a letter from the bank stating Maddox did not wish to close a sale of the property.

Without getting Maddox's approval, Fleming received an assignment of the contract from the Wrights and in turn assigned it to Wesselhoft. Payments were made by Fleming, on behalf of Wesselhoft, to the bank until the bank was instructed by Maddox to refuse further payments. Payments were thereafter timely tendered directly to Maddox, though the checks have not been cashed.

Testimony was heard and summarized by the Judge of the Lake County Superior Court, Morton B. Kanz. His notes have been certified to this Court, pursuant to the Indiana Rules of Civil Procedure, Appellate Rule 7.2, and provide the evidentiary basis for our review. In his judgment of November 15, 1982, the judge found the Wrights had assigned the contract to Fleming, who then sold to Wesselhoft. Appellees, the court found, had at all times been ready, willing and able to pay off the remaining contract balance and close the sale. The judge further found that Maddox had informed the bank not to provide payoff data and advised Fleming to continue making contract payments. Those payments have been timely made.

The court concluded that Maddox's continued failure to approve the contract assignment and his refusal to cooperate in closing a sale by furnishing a deed or payoff statement, were instrumental in giving rise to this action. The judge found that appellees were not liable to Maddox and denied relief upon Maddox's complaint. Fleming was ordered to continue making the necessary payments on the contract until the balance was paid in full.[1] The judge entered an order on February 3, 1983, setting the cause for further evidence on the Wrights' remedy for Maddox's failure to approve an assignment or accept a payoff on the land contract.

In lieu of an evidentiary hearing, the parties agreed to submit briefs in support of their positions and on May 11, 1984, the

---

1. The court also included the following language:

    "IT IS FURTHER ORDERED that the Court should and hereby does approve defendant Wrights' contract assignment to Fleming Realty and Fleming Realty's subsequent (contract) sale to Robert Wesselhoft[.]"

Maddox filed his motion to correct errors on January 7, 1983, objecting to the inclusion of this language. In response thereto, the Court entered a second order on February 3, 1983, vacating the above language.

court entered its final order, memorandum and judgment, incorporating the two prior rulings. The judge therein acknowledged the provision precluding assignment without consent and concluded that Maddox did not waive the provision. The judge additionally found that there was no provision in the contract which would preclude prepayment of the contract balance. The evidence, he stated, was clear that an attempt was made to obtain Maddox's consent to an assignment and when unsuccessful, an attempt was made to pay off the contract balance. That too was refused and Fleming was told to continue making payments to the bank. The court again found that the Wrights were ready, willing and able to close a sale of the property but "the plaintiff's recalcitrance precluded a reasonable resolution." The court concluded that Maddox had two mutually exclusive options; he could allow assignment or accept a contract payoff. When Maddox failed to do either, the court found that "because of the plaintiff's obduracy, the premises twice changed hands, contract payments have been paid continuously and positions have changed." The court ordered that Maddox be estopped from asserting the non-assignment clause of the contract between himself and the Wrights. It is the order of estoppel which Maddox appeals.

Maddox's complaint, entitled as one for "Foreclosure, Specific Performance, Breach of Contract and Interference of Contract," seeks forfeiture of the property and damages of $5,000.00. Paragraph 11 of the contract provides as follows:

"11. In the event of the failure of Buyers to perform the covenants and agreements herein contained on their part to be kept and performed, Seller shall have the right to declare this contract null and void and to retake possession of said real estate. Thereupon all interest of Buyers in and to said real estate shall cease and terminate and Seller may retain all money which has been paid by Buyers hereunder as liquidated damages for such failure to perform."

This provision would allow Maddox to retake possession of the property and retain all amounts previously paid under the contract as liquidated damages. The forfeiture provision in paragraph 11 closely resembles the forfeiture provision at issue in the case of *Skendzel et al. v. Marshall et al.* (1973), 261 Ind. 226, 301 N.E.2d 641. The Court therein held that although forfeitures are disfavored at law, provisions for reasonable liquidated damages may be permitted. To determine whether forfeiture is reasonable under the circumstances of each case, the court must consider the total contract price, the amount previously paid under the contract, and the value of the property. *Skendzel et al. v. Marshall et al., supra,* 261 Ind. at 233, 234, 301 N.E.2d at 645, 646.

Although Maddox requested the court to order forfeiture of the property, Maddox failed to present the court with any evidence of amounts paid on the contract at the time of the alleged default or the balance due thereon, so as to justify forfeiture of the property.[2]

The trial court found that under the contract, Maddox had two options; he could accept the assignment or allow the balance of the contract to be paid off in full. Maddox did have the right to prohibit assignment of the contract. However, the contract does not prohibit prepayment of the

---

2. The Court in *Skendzel* in discussing the nature of land contracts, states:

"The Court, in effect, views a conditional land contract as a sale with a security interest in the form of legal title reserved by the vendor. Conceptually, therefore, the retention of the title by the vendor is the same as reserving a lien or mortgage. Realistically, vendor-vendee should be viewed as mortgagee-mortgagor."
261 Ind. at 234, 301 N.E.2d at 646.

The Court goes on to conclude that the lien held by the vendor is logically enforced through a foreclosure proceeding. Pursuant to Indiana's Trial Rule 69(C) and IND. CODE § 32–8–16–1, dealing with foreclosure, a purchaser in default is allowed a period of redemption, during which time he may redeem his interest. As a land contract is similar in nature to a mortgage, the Wrights would be allowed a chance to pay off the contract balance.

contract balance. Paragraph 1 of the contract reads as follows:

"1. The purchase price of said real estate which Buyers promise and agree to pay to Seller and which Seller agrees to accept in the sum of FIFTEEN THOUSAND AND NO/100 DOLLARS, which shall be paid in installments as follows: $125.00 per month, *or more* including interest, beginning September 1, 1974 and on the first day of each month thereafter until the purchase price and all interest thereon are fully paid. Interest shall accrue on the unpaid balance of the purchase price from the date of this contract at the rate of Nine Percent (9%) per annum." (Emphasis added.)

Evidence presented at trial and the findings of the judge show that appellees were at all times ready, willing and able to pay off the balance of the contract price, and Fleming specifically informed Maddox of their desire to do so. Maddox, however, refused to discuss the matter and would not allow an assignment or provide appellees with a figure necessary to satisfy the debt. Fleming received a payoff figure from the bank. The bank, though, informed them that its role was merely of collection agent and the figure provided could not be construed as the exact figure needed for payoff. Maddox would have to provide that figure himself. Maddox refused to offer the information and specifically requested the bank to refuse any attempt of payoff.

By his actions in refusing assignment or payoff, Maddox made performance of the land contract by appellees impossible. It is well established that where the actions or conduct of one party to a contract prevent the other from performing his part, the other's non-performance will be excused. *Beatty v. Miller* (1911), 47 Ind.App. 494, 94 N.E. 897. Although appellees were willing to fulfill the contract, Maddox's failure to cooperate in any way excuses performance by the appellees.

In his final judgment and order of May 11, 1984, the judge, in ruling against Maddox, ordered that Maddox be estopped from asserting the contract assignment provision, thereby allowing appellees to continue making payments under the contract. The court essentially leaves the parties in a position of status quo, with Maddox continuing to receive the installments provided for in the contract.

Maddox argues on appeal that the trial judge erred in ordering he be estopped from asserting the non-assignment provision. Maddox asserts that he had no notice of a potential issue of estoppel being raised in the case and additionally states that the appellees failed to provide the necessary elements of estoppel upon which the judgment must be entered. It is true that one asserting the defense of equitable estoppel must present evidence of:

"(1) A representation or concealment of material facts;

(2) The representation must have been made with knowledge of the facts;

(3) The party to whom it was made must have been ignorant of the matter;

(4) It must have been made with the intention that the other party should act upon it; [and]

(5) The other party must have been induced to act upon it."

*State ex rel. Crooke et al. v. Lugar et al.* (1976), 171 Ind.App. 60, 74, 354 N.E.2d 755, 765.

The facts in this case do not present a scenario to which appellees may assert equitable estoppel. Estoppel, however, was ordered by the trial judge in fashioning an equitable remedy. It must be recognized that a trial judge sitting in equity is not bound by remedies existing at law. The trial judge is given broad discretion in forming equitable remedies and may mold his decrees so as to do equity between the parties. *Dodd v. Reese* (1940), 216 Ind. 449, 24 N.E.2d 995. The trial judge herein was forming an equitable remedy and did not err in ordering that Maddox be estopped from asserting the non-assignment provision.

Maddox also argues that appellees failed to properly tender the contract balance. A proper tender generally requires full payment of a debt due and if refused, it must be kept open by paying the full amount into court. *Cole Associates, Inc. v. Holsman* (1979), 181 Ind.App. 431, 391 N.E.2d 1196. The evidence is clear that appellees were ready and willing to tender the full amount owed on the contract. Maddox, however, refused to provide them with any figure representing the amount owed. Although the bank provided a payoff figure, appellees were specifically warned that the figure provided was not binding upon Maddox. Appellees therefore were unable to make a proper tender. This set of circumstances was addressed by the Court in the case of *Chesterton State Bank v. Coffey* (1983), Ind.App., 454 N.E.2d 1233. The Court there held that acts, insufficient to make a proper tender, may operate as proof of a readiness to perform. The rights of a party to a contract will be protected where a proper tender is made impossible by reason of circumstances not the fault of the tenderer. *Chesterton, supra,* at 1236. Because of his failure to provide a figure of the amount due on the contract, Maddox may not now assert the failure of appellees to make a proper tender.

In their brief, appellees request this Court to order the payment of damages and their costs incurred in defense of the appeal. Appellees, however, do not specify the nature or extent of damages they seek and also fail to cite any authority which might indicate they are entitled to damages. Additionally, the parties to an appeal generally must bear their own costs. *Trotcky v. Van Sickle* (1949), 227 Ind. 441, 85 N.E.2d 638. An exception to the rule, however, may be recognized where a party has been dragged into baseless litigation. *Kikkert v. Krumm* (1985), Ind., 474 N.E.2d 503. Where a party knowingly files a baseless claim, or fails to dismiss it upon discovering that it is baseless, his behavior may be deemed "obdurate" and the costs of appeal may be awarded the prevailing party. His conduct must be vexatious and oppressive in the extreme and a blatant abuse of the judicial process. *Kikkert v. Krumm, supra.*

Intentional conduct that gives rise to a cause of action, however, is not obdurate behavior, but is merely conduct that may form the basis of a potential lawsuit. *Kikkert v. Krumm, supra.* Although the evidence clearly shows that Maddox refused to cooperate with appellees, his conduct on filing suit was not such as to present a situation where costs should be awarded.

Judgment of the trial court is affirmed.

Affirmed.

GARRARD, J., concurs.

STATON, P.J., dissents with opinion.

STATON, Presiding Judge, dissenting.

I dissent from the Majority Opinion for the following reasons:

1. When the Wrights, the vendees, sold their equity, approximately 9%, in the contract to their real estate agent, Fleming, without the consent of Maddox, the vendor, they committed a material breach of the contract.

2. When the Wrights moved out of the house so that Fleming could sell the house to another buyer, they abandoned the property.

3. The material breach and abandonment of the property placed Maddox's security interest, approximately 91%, in jeopardy.

4. A second material breach occurred when Fleming prepared a second and new conditional sales contract for the sale of the property between himself and Wesselhoft. This new contract prepared by Fleming further jeopardized Maddox's security interest.

5. As a matter of law, when a vendee has made only a minimal payment on a conditional sales contract for the purchase of real property and later commits a material breach which jeopardizes the vendor's security and has abandoned the

property, the vendor is entitled to a forfeiture.

6. The evidence does not support the conclusion of fact reached by the Majority that the Wrights were always ready, willing, and able to tender the correct amount of the pay-off. By the terms of the contract, the pay-off was in excess of $13,608.50 since the Wrights had failed to pay the real estate taxes from the beginning of the contract. Maddox had never been offered more than $10,000.00 by Fleming or the Wrights.

Maddox, the seller, had known and befriended Wright when he was a young boy. Later, when Wright found himself a bride and married, Maddox sold the Wrights his home at a bargain price, $15,000.00. The home was purchased on a conditional sales contract dated September 3, 1974, which provided for monthly installments of $125.00 each month, 9% interest on the unpaid balance, and the payment of real estate taxes by the Wrights. Also, if it became necessary for Maddox to pay the real estate taxes because the Wrights failed to timely pay them, then an additional 10% would be charged on the amount of taxes paid by Maddox and this amount would be added to the unpaid balance due on the contract.

When Fleming, the real estate agent, contacted Maddox in 1980 for his consent to assign the contract, Maddox told Fleming that he wouldn't sell the house to anyone else "that cheap". He further told Fleming that he did not want to discuss the matter further since he was not feeling well. There is no evidence that Maddox unreasonably withheld his consent for an assignment.

Later, Fleming contacted the bank where the Wrights made their contract payments. He received from the bank a pay-off figure of $13,608.50. Fleming was told by the bank that he would have to obtain the actual pay-off figure from Maddox. Fleming called Maddox and offered him a pay-off of $10,000.00—some $3,608.50 less than the bank's pay-off figure and less six years of real estate taxes and interest that the

Wrights had failed to pay. Fleming never offered Maddox more than $10,000.00 as a pay-off on the contract. The correct pay-off could have been calculated by Fleming by merely consulting the terms of the contract and obtaining the real estate tax information from his clients, the Wrights. This he failed to do. This the trial court failed to do even though the contract was admitted in evidence.

Without Maddox's consent to assign the contract, Fleming as the real estate agent for the Wrights purchased the contract interest of the Wrights and accepted their assignment. Later, Fleming prepared a new conditional sales contract and sold the house to Robert Wesselhoft for $27,000.00. The contract provided:

"The parties, Fleming as seller and Wesselhoft, as buyer are executing a new land contract for $14,000.00 based on a $27,000.00 price and $13,000.00 down at 9% interest, with a five (5) year termination or due date of the unpaid balance."

When Maddox learned that the contract had been assigned and resold under a new conditional sales contract and that Fleming was making the payments to the bank instead of the Wrights, he ordered the bank to stop accepting payments from Fleming. Later, he brought this action to recover his property under the terms of the contract.

The Majority admits that the trial court erroneously applied equitable estopple to these facts but went on to say: "It must be recognized that a trial judge sitting in equity is not bound by remedies existing at law. The trial judge is given broad discretion in forming equitable remedies and may mold his decree so as to do equity between the parties," citing *Dodd v. Reese* (1940), 216 Ind. 449, 24 N.E.2d 995 which does not support this proposition. *Dodd* was before the court on a motion to strike a petition to intervene. The Court held that Dodd had an interest under Section 2–222, Burns' Ind.Ann.St.1933 sufficient to allow him to intervene as a party and that the trial court abused its discretion in sustaining the mo-

tion to strike the petition to intervene. The equity discussion by the Court is dicta.

The trial court here is sitting in law not equity. Maddox and the Wrights had executed a contract to purchase real estate. Wrights had only minimal equity, less than 9%, when they failed to obtain Maddox's consent to assign the contract to their real estate agent, Fleming. This was a material breach of the contract. Too, the Wrights moved out of the house, abandoning the property. Later, Fleming prepared a new contract which excluded Maddox entirely. This contract was a contract to purchase the same property for nearly twice the amount of the previous contract, $15,000.00 as compared with $27,000.00, with Fleming as vendor and Wesselhoft as vendee.

Maddox has not only suffered a material breach of the contract but an abandonment of the property by the Wrights to unknown purchasers. It is difficult to imagine a greater jeopardy to Maddox's security interest. Under the law, Maddox is entitled to a forfeiture. There is no room for equitable considerations.

When a vendee has made only a minimal payment on a conditional sales contract for the purchase of real property and later commits a material breach which jeopardizes the vendor's security and has abandoned the property, the vendor is entitled to a forfeiture as a matter of law. *Skendzel v. Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641; *Goff v. Graham* (1974), 159 Ind.App. 324, 306 N.E.2d 758; *Morris v. Weigle* (1978) 270 Ind. 121, 383 N.E.2d 341; *Johnson v. Rutoskey* (1984), Ind.App., 472 N.E.2d 620.

I would reverse the judgment of the trial court with instructions to enter judgment for Maddox.