495 N.E.2d 207 (1986)
The GATHERING, Appellant (Employer below),
v.
REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION, John C. Mowrer, David L. Adams, and Joe A. Harris, As Members of and As Constituting the Review Board of the Indiana Employment Security Division, and Donetta R. Drangmeister, Appellees (Employee below).
No. 2-1285A400.
Court of Appeals of Indiana, Fourth District.
July 15, 1986.
Cohen & Thiros by Dawn Wellman, Merrillville, for appellant.
Linley E. Pearson, Atty. Gen., Cheryl L. Grainer, Deputy Atty. Gen., Indianapolis, for Review Bd.
James V. Tsoutsouris by Joanne Tapocsi, Valparaiso, for Employee.
CONOVER, Judge.
Employer-Appellant The Gathering appeals the decision of the Review Board of the Indiana Employment Security Division (Review Board) finding Claimant-Employee *208 Donetta R. Drangmeister (Drangmeister) left her employment with good cause and thus was entitled to unemployment benefits. IND. CODE 22-4-15-1(b).[1]
We affirm.

ISSUES
The Gathering raises one issue for our review:
1. Whether the Review Board's finding Drangmeister is entitled to unemployment benefits is contrary to law.
Drangmeister petitions for her costs on appeal because of appellant's obdurate behavior.

FACTS
Drangmeister began working at The Gathering, a Valparaiso restaurant, in October 1981. She was hired as a waitress. She subsequently was promoted to assistant, then banquet coordinator.
In September 1984, Drangmeister was receiving "constant friction and harrassment" from her manager. Because of the problem, she gave the restaurant two weeks notice of her resignation.
As an incentive for Drangmeister to stay, Bill Kinney (Kinney), managing supervisor for all The Gathering restaurants,[2] offered Drangmeister a 2% commission on banquet food and liquor sales, and training for the position of assistant manager. Her training was to commence "at the first of the year." On January 5, 1985, Drangmeister asked supervisor Kinney when the training would begin. Kinney said he and owner Michael Rosenow (Rosenow) would meet with her on January 12 to finalize the plans for her training, and her new rate of pay.
On January 12, Drangmeister, busy arranging an upcoming banquet with customers, was unable to meet with Rosenow and Kinney. Rosenow said he would return to discuss the matter later, but the later meeting never occurred. Kinney thereafter scheduled Drangmeister to work as a hostess and assistant manager on January 14. She was then scheduled to work as sole manager or assistant manager, depending on the night, until January 23. Excepting the 2% commission she already received on banquet food and liquor sales, Drangmeister never received more than banquet coordinator pay.
On January 23, Drangmeister asked Kinney about the promotion to assistant manager. Kinney then informed her "things would remain the same." Drangmeister quit her job, saying she had "lost respect for the management."
No specific date or rate of pay had been discussed regarding Drangmeister's assistant managership. Rosenow testified no assistant manager position was available with the restaurant in January 1985, Drangmeister was performing in a "quasi-management" position, and he had given her no definite promise of a position in management.
On March 21, 1985, a Review Board deputy found Drangmeister had voluntarily left her employment without good cause. Drangmeister appealed. The appeals referee reversed the initial decision, finding and concluding:
FINDINGS OF FACT: The claimant worked for the subject employer for the period from October, 1981 to January 23, 1985, last being employed as a dining room supervisor, assistant manager, and *209 hostess, earning five (5) dollars per hour for full-time employment. That on or about January 23, 1985, the claimant voluntarily left her employment with the subject employer based on the employer's actions in failing to comply with their promise made to her that in effect after the new year, she would be promoted to the assistant manager's position with a pay increase. The facts show that given this promise and/or representation, the claimant continued to work on occasions and/or was trained for the assistant manager's position; and that after January 1, 1985, when talked to by claimant once again about the promise, promotion, and raise, the claimant was in effect informed that she would not, without explanation, be given the promotion and/or a pay raise as agreed to. The facts reflect that given the employer's actions, claimant did elect to voluntarily leave her employment.
CONCLUSION: From the foregoing findings of fact, it is concluded in light of the undisputed testimony of claimant that employer failed to comply with their agreed to promise of a promotion and/or pay increase to claimant; and as a result, claimant's quitting was with good cause in connection with the work.
DECISION: The deputy's initial determination is hereby reversed to show the claimant voluntarily left her employment with good cause in connection with the work. The penalties, therefore, of Chapter 15, Section 1 of the Indiana Employment Security Act are not applicable in this particular case. The claimant is entitled to unemployment benefits, if otherwise eligible.
The Gathering appealed to the full Review Board. The Review Board affirmed the appeals referee's decision. This appeal follows.
Other facts necessary to our decision appear below.

DISCUSSION AND DECISION

I. Standard of Review

The Gathering claims the Review Board's decision Drangmeister left her employment with good cause, and thus was eligible for unemployment benefits, is not supported by sufficient evidence and is therefore contrary to law. In Quillen v. Review Board of the Indiana Employment Security Division (1984), Ind. App., 468 N.E.2d 238, we discussed the applicable standard of review on appeals from Review Board determinations, stating:
We neither reweigh the evidence nor judge the credibility of witnesses in unemployment compensation cases. Our sole function is to determine whether the Review Board's findings of fact contain all specific facts relevant to the contested issue. We next determine whether the Review Board has resolved those issues in conformity with the law. Smithson v. Review Board of the Indiana Employment Security Division, (1983) Ind. App., 446 N.E.2d 1014, 1015. The Board's findings are deemed conclusive and we consider only the evidence and inferences drawn therefrom supporting the Board's decision. We reverse if either there is no substantial evidence to support the Review Board's findings or reasonable persons would reach a different result. Moore v. Review Board of the Indiana Employment Security Division, (1984) Ind. App., 461 N.E.2d 737, 739. Scholl v. Review Board of the Indiana Employment Security Division, (1984) Ind. App., 461 N.E.2d 691, 692. Mshar v. Review Board of the Indiana Employment Security Division, (1983) Ind. App., 445 N.E.2d 1376, 1377.
468 N.E.2d at 241.

II. Voluntary Abandonment of Employment

An employee who voluntarily leaves his employment without good cause is ineligible for full unemployment benefits. IC XX-X-XX-X(b); see also Jackson v. Review Board of the Indiana Employment Security Division (1966), 138 Ind. App. 528, 215 N.E.2d 355, 360. Whether a claimant has left work without good cause is a question of fact for the Review Board. Quillen, supra, 468 N.E.2d 238, 241; Dozier v. Review *210 Board of the Indiana Employment Security Division (1982) Ind.App., 436 N.E.2d 373, 375.
In Foster v. Review Board of the Indiana Employment Security Division (1981), Ind. App., 421 N.E.2d 744, Judge Ratliff stated:
It has consistently been recognized in Indiana that good cause which justifies voluntary termination must be job-related and objective. See Geckler v. Review Board of the Indiana Employment Security Division, (1963) 244 Ind. 473, 193 N.E.2d 357; Thomas v. Review Board of the Indiana Employment Security Division, supra. In Geckler v. Review Board of the Indiana Employment Security Division, supra, 244 Ind. at 477-78, 193 N.E.2d at 359, our supreme court stated:
"As a general rule, the cases hold that `good cause,' which justifies the voluntary termination of employment and entitles the claimant to compensation, must be related to the employment, and thus be objective in character. The cases have not extended the construction of `good cause' to include purely personal and subjective reasons which are unique to the employee, but have required that such `cause' would similarly affect persons of reasonable and normal sensitivity."
Thus, a claimant who has terminated his or her employment must show that (1) the reasons for abandoning the employment were such as would motivate a reasonable, prudent person to terminate under the same or similar circumstances; and (2) these reasons are objectively related to the job. Gray v. Dobbs House, Inc., (1976) 171 Ind. App. 444, 357 N.E.2d 900.
421 N.E.2d at 746.
The Gathering claims Drangmeister's reasons for quitting were not job related, they were merely personal. It cites Drangmeister's statement she had "lost faith in the management" to support that claim. We disagree.
Drangmeister threatened to quit her job in September 1984. As an incentive for her to stay, the managing supervisor made promises to her which included assistant manager training and an increase in pay. These incentives were to commence after the beginning of the year (1985). After the new year, when Drangmeister inquired about these incentives, she was informed things would "remain the same." In other words, The Gathering reneged on its promises.
Drangmeister's reasons for leaving were job related. When Kinney placed The Gathering's added incentives on the table in 1984, his promises were directly related to the operation of the restaurant. Drangmeister's 1985 remark she had "lost faith in the management" merely stated her reaction to The Gathering's failure to follow through. Her "loss of faith" was the result thereof. The Gathering's breach of its promises was the cause of Drangmeister's voluntary termination. In Marozsan v. Review Board of the Indiana Employment Security Division (1982), Ind. App., 429 N.E.2d 986, we stated:
It is not the purpose of the Unemployment Security Act to allow employees to terminate their employment merely because working conditions are not entirely to their liking. It is only when the demands placed upon employees are unreasonable or unfair, so much so that a reasonably prudent person would be impelled to leave that the Act will provide compensation to employees who voluntarily quit their jobs.
429 N.E.2d at 990.
Drangmeister successfully carried her burden to establish good cause for leaving her employment. Richey v. Review Board of the Indiana Employment Security Division (1985), Ind. App., 480 N.E.2d 968, 971.
Where it does not appear reasonable men would be bound to reach a different conclusion, this court is bound by the factual findings of the Review Board. Lewis v. Review Board of the Indiana Employment Security Division (1972), 152 Ind. *211 App. 187, 282 N.E.2d 876, 882. We are so bound in this appeal. The Gathering's failure to train, promote, and raise Drangmeister's pay was good cause for her to leave its employment.
The Review Board had substantial evidence before it which supports its findings. Its decision is therefore not contrary to law.

III. Assessment of Appellate Costs for Obdurate Behavior

In her appellee's brief, Drangmeister argues she should be entitled to appellate attorney fees because The Gathering has "dragged her into a baseless appeal." (Appellee's Brief, p. 6). Drangmeister argues the cases cited by the appellant do not apply to the facts. Thus, she opines, to appeal the Review Board's decision "continues a frivolous appeal as an added expense to the appellee." She adds, it is "grossly inequitable" for the appellee to incur added expenses.
In Maddox v. Wright (1986), Ind. App., 489 N.E.2d 133, our Third District faced a situation where the appellees requested the court to order the payment of damages and their costs incurred in defense of the appeal. Speaking for the majority, Judge Hoffman stated:
[T]he parties to an appeal generally must bear their own costs. Trotcky v. Van Sickle (1949), 227 Ind. 441, 85 N.E.2d 638. An exception to the rule, however, may be recognized where a party has been dragged into baseless litigation. Kikkert v. Krumm (1985), Ind., 474 N.E.2d 503. Where a party knowingly files a baseless claim, or fails to dismiss it upon discovering that it is baseless, his behavior may be deemed "obdurate" and the costs of appeal may be awarded the prevailing party. His conduct must be vexatious and oppressive in the extreme and a blatant abuse of the judicial process. Kikkert v. Krumm, supra.

489 N.E.2d at 138.
In this case, The Gathering's claim on appeal was not baseless. The Review Board deputy initially had ruled in The Gathering's favor. Also, the cases cited by The Gathering support the theory it argues on appeal. The Gathering argues Drangmeister voluntarily terminated her employment for personal reasons, and thus was not entitled to unemployment benefits. The cases they cite support denial of benefits to employees who quit for personal reasons. Accordingly, this case does not warrant an assessment of costs for obdurate behavior.
The petition for attorney's fees is denied. The decision of the Review Board is affirmed.
YOUNG, P.J., and MILLER, J., concur.
NOTES
[1] IC XX-X-XX-X(b) states:

With respect to benefit periods, established on and after July 6, 1980, an individual who has voluntarily left his employment without good cause in connection with the work or who was discharged from his employment for just cause is ineligible for waiting period or benefit rights for the week in which the disqualifying separation occurred and until he has earned remuneration in employment equal to or exceeding the weekly benefit amount of his claim in each of eight (8) weeks. If the qualification amount has not been earned at the expiration of an individual's benefit period, the unearned amount shall be carried forward to an extended benefit period or to the benefit period of a subsequent claim.
[2] There are three "The Gathering" restaurants, located in Valparaiso, Merrillville, and Schererville respectively.